**No. 26-3514**

In the

# United States Court of Appeals

## for the Sixth Circuit

**ALISON KAREEM,**

***Plaintiff-Appellant*,**

**v.**

**CUYAHOGA COUNTY BOARD OF ELECTIONS,**

**and**

**FRANK LAROSE, Ohio Secretary of State**

**and**

**MICHAEL C. O'MALLEY, Cuyahoga County Prosecuting Attorney,**

***Defendants-Appellees.***

**On Appeal from the United States District Court**
**for the Northern District of Ohio at Cleveland**
**Case No. 1:20-CV-2457**

**BRIEF OF APPELLANT ALISON KAREEM**

Curt C. Hartman
THE LAW FIRM OF CURT C. HARTMAN
7394 Ridgepoint Drive, Suite 8
Cincinnati, Ohio 45230
(513) 379-2923
hartmanlawfirm@fuse.net

Christopher P. Finney
FINNEY LAW FIRM LLC
4270 Ivy Point Blvd., Suite 225
Cincinnati, Ohio 45245
(513) 943-6655
chris@finneylawfirm.com

*Attorneys for Appellant Alison Kareem*

## RULE 26.1(A) CORPORATE DISCLOSURE STATEMENT

Pursuant to 6th Cir. R. 26.1, Appellant Alison Kareem makes the following disclosure:

**Is either party a subsidiary or affiliate of a publicly owned corporation?**

No.

**Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?**

No.

_/s/ Curt C. Hartman_______
*Counsel for Appellant Alison Kareem*

# TABLE OF CONTENTS


**Corporate Affiliations / Financial Disclosure** ........................................ i

**Table of Contents** ........................................ ii

**Table of Authorities** ........................................ iv

**Jurisdictional Statement** ........................................ 1

**Statement of Issue** ........................................ 1

**Request for Oral Argument** ........................................ 2

**Statement of the Case** ........................................ 2

**Statement of the Facts** ........................................ 4

**Summary of Argument** ........................................ 6

**Argument** ........................................ 7

**I.** Disposition of cross-motions for summary judgment are subject to *de novo* review ........................................ 10

**II.** The constitutional challenge to the statutes at issue simply concerns an as-applied challenge to the extent such statutes are applied so as to prohibit the publication or dissemination of ballot selfies ........................................ 11

**III.** Ohio's ban on ballot selfies violates the First Amendment by censoring core political speech in and about elections ........................................ 14

**A.** A ballot selfie ban is a content-based restriction on speech ...... 15

**B.** The District Court improperly accepted as evidence putative expert testimony which did not satisfy the requirements of Evid. R. 702 or *Daubert* ........................................ 25

**C.** In light of the ballot selfie ban being a content-based restriction on core political speech, such a ban does not meet the requirements of strict scrutiny ........................................ 29

**D.** Even if a ballot selfie ban is considered as a content-neutral restriction on core political speech, such a ban does not meet the requirements of intermediate scrutiny ........................................ 40

**IV.** The Cuyahoga County Board of Elections has not demonstrated its entitlement to Eleventh Amendment immunity ........ 45

**Conclusion** ........ 52

**Certificate of Compliance** ........ 54

**Certificate of Service** ........ 54

**Appendix: Designation of Relevant District Court Documents** ........ 55

**Addendum** ........ 57

## TABLE OF AUTHORITIES

***CASES***

*Alkire v. Irving*,
330 F.3d 802 (6th Cir. 2003) .......... 49-50

*Anderson v. City of Hermosa Beach*,
621 F.3d 1051 (9th Cir. 2010) .......... 45

*Animal Legal Def. Fund v. Otter*,
118 F. Supp.3d 1195 (D. Idaho 2015) .......... 39-40

*Ashcroft v. ACLU*,
542 U.S. 656 (2014) .......... 37-38

*Austin v. Michigan State Chamber of Commerce*,
494 U.S. 652 (1990) .......... 30

*Bartlett v. Superior Court*,
150 Ariz. 178, 722 P.2d 346 (1986) .......... 44

*Baugh v. Judicial Inquiry & Review Comm'n*,
907 F.2d 440 (4th Cir. 1990) .......... 15-16, 22

*Beiersdorfer v. LaRose*,
397 F. Supp.3d 1037 (N.D. Ohio 2019) .......... 46-47

*Beiersdorfer v. LaRose*,
2021 U.S. App. LEXIS 24988 (6th Cir. Aug. 20, 2021) .......... 46

*Bell v. Johnson,*
308 F.3d 594 (6th Cir. 2002) .......... 31

*Brown v. Entertainment Merchants Ass'n*,
564 U.S. 786 (2011) .......... 47

*Brown v. Yost*,
103 F.4th 420 (6th Cir. 2024) .......... 29

*Bureau v. State Farm Fire & Cas. Co.*,
129 Fed. Appx. 972 (6th Cir. 2004) .......... 26

*Burson v. Freeman*,
504 U.S. 191 (1992) .......... 32-35

*Camreta v. Greene*,
563 U.S. 692 (2011) .......... 47

*Cash v. Hamilton County Dep't of Adult Probation*,
388 F.3d 539 (6th Cir. 2004) .......... 49

*Citizens for Tax Reform v. Deters*,
518 F.3d 375 (6th Cir. 2008) ........................................................ 29

*Citizens United v. Federal Elec. Comm'n*,
558 U.S. 310 (2010) ........................................................ 11, 30

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994) ........................................................ 14, 44

*CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*,
589 F.3d. 235 (6th Cir. 2009) ........................................................ 11

*Collins v. Putt*,
979 F.3d 128 (2d Cir. 2020) ........................................................ 21

*Connection Distrib. Co. v. Holder*,
557 F.3d 321 (6th Cir. 2009)(*en banc*) ........................................................ 40

*Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N.Y.*,
447 U.S. 530 (1980) ........................................................ 32

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ........................................................ 26

*Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*,
70 Ohio St.3d 281, 638 N.E.2d 991, 1994-Ohio-295 ........................................................ 13

*Crookston v. Johnson*,
841 F.3d 396 (6th Cir. 2015) ........................................................ 19, 22-25

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ........................................................ 6, 25-28

*Doe v. Burlew*,
165 F.4th 525 (6th Cir. 2026) ........................................................ 11-12

*Dubuc v. Mich. Bd. of Law Exam'rs*,
342 F.3d 610 (6th Cir. 2003) ........................................................ 50

*Ernst v. Rising*,
427 F.3d 351 (6th Cir. 2005)(*en banc*) ........................................................ 49-52

*Field Day, LLC v. County of Suffolk*,
463 F.3d 167, 174 (2d Cir. 2006) ........................................................ 13

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461 (2025) ........................................................ 14

*Fresenius Med. Care Cardiovascular Res. Inc. v. Puerto Rico*,
322 F.3d 56 (1st Cir. 2003) ........................................................ 48

*Frisby v. Schultz*,
487 U.S. 474 (1988) ........................................................................ 41-42

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997) ........................................................................ 27

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
546 U.S. 418 (2006) ........................................................................ 14

*Gragg v. Kentucky Cabinet for Workforce Dev.*,
289 F.3d 958 (6th Cir. 2002) ............................................................ 48

*Gray v. Laws,*
51 F.3d 426, 435 (4th Cir. 1995) ....................................................... 52

*Hines v. Pardue*,
117 F.4th 769 (5th Cir. 2024) ............................................................ 15

*Hunter v. Hamilton Cty. Bd. of Elec.*,
850 F. Supp.2d 795 (S.D. Ohio 2012) ............................................. 46-47

*Iles v. Logo Paris, Inc.*,
909 F.2d 1483 (6th Cir. 1990) ........................................................... 50

*Indiana Civ. Liberties Union Found. Inc. v. Indiana Sec'y of State*,
2015 U.S. Dist. LEXIS 182116 (S.D. Ind. Oct. 19, 2015) ................. 18

*Indiana Civ. Liberties Union Found. Inc. v. Ind. Sec'y of State*,
229 F. Supp.3d 817 (S.D. Ind. 2017)) ............................................. *passim*

*Istvan v. Honda Motor Co.*,
455 F. App'x 568 (6th Cir. 2011) ...................................................... 28

*J.S. Haren Co. v. Macon Water Auth.*,
145 Fed. App'x. 997 (6th Cir. 2005) ................................................. 48

*Johnson v. Burken*,
930 F.2d 1202 (7th Cir. 1991) ........................................................... 25

*Johnson v. City of Fort Wayne, Ind.*,
91 F.3d 922 (7th Cir. 1996) ............................................................... 50

*Kareem v. Cuyahoga Cty. Bd. of Elec.,*
95 F.4th 1019 (6th Cir. 2024) ............................................................ 3, 47

*Kohls v. Bonta*,
752 F. Supp.3d 1187 (E.D. Calif. 2024) ........................................... 18

*Kentucky v. EPA*,
123 F.4th 447 (6th Cir. 2024) ............................................................ 25

*Libertarian Party of Ohio v. Blackwell*,
462 F.3d 579 (6th Cir. 2006) .......... 30

*McGuire v. Reilly,*
386 F.3d 45, 61 (1st Cir. 2004) .......... 13-14

*McIntyre v. Ohio Elec. Comm'n*,
514 U.S. 334 (1995) .......... 7

*Members of City Council v. Taxpayers for Vincent*,
466 U.S. 789 (1984) .......... 43

*Michigan Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*,
758 F.3d 787 (6th Cir. 2014) .......... 27

*Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*,
276 F.3d 845 (6th Cir. 2002) .......... 50

*NAACP v. Button*,
371 U.S. 415 (1963) .......... 37

*Naturist Soc., Inc. v. Fillyaw*,
736 F. Supp. 1103 (S.D. Fla. 1990) .......... 44

*NetChoice, LLC v. Yost*,
180 F.4th 268 (6th Cir. 2026) .......... 31, 37

*Newell Rubbermaid, Inc. v. Raymond Corp.*,
676 F.3d 521 (6th Cir. 2012) .......... 27

*Pagan v. Fruchey*,
492 F.3d 766 (6th Cir. 2007)(*en banc*) .......... 30

*Phelps-Roper v. Strickland*,
539 F.3d 356 (6th Cir. 2008) .......... 15

*Reed v. Town of Gilbert*,
576 U. S. 155 (2015) .......... *passim*

*Reno v. ACLU*,
521 U.S. 844 (1997) .......... 38

*Rideout v. Gardner*,
38 F.3d 65 (1st Cir. 2016) .......... *passim*

*Rideout v. Gardner*,
123 F. Supp.3d 218 (D.N.H. 2015) .......... 8, 19, 35

*Riley v. National Fed'n of the Blind*,
487 U.S 781(1988) .......................................................................... 41

*S.J. v. Hamilton County*,
374 F.3d 416 (6th Cir. 2004).............................................................. 49

*Silberberg v. Board of Elections of N.Y.*,
272 F. Supp.3d 454 (S.D.N.Y. 2017)............................................... 19, 22

*Snyder v. Finley & Co.*,
37 F.4th 384 (6th Cir. 2022)............................................................... 10

*Soltysik v. Padilla,*
910 F.3d 438 (9th Cir. 2018).............................................................. 21

*State v. Beener,*
54 Ohio App.2d 14, 374 N.E.2d 435 (2d Dist. 1977) ........................ 13

*State v. Rousseau*,
159 Ohio App. 3d 34, 822 N.E.2d 847 (9th Dist, 2004) .................... 51-52

*State ex rel. Semik v. Cuyahoga Cty. Bd. of Elec.*,
67 Ohio St. 3d 334, 617 N.E.2d 1120 (1993) .................................. 51

*Susan B. Anthony List v. Driehaus*,
814 F.3d 466 (6th Cir. 2016).............................................................. 17-18, 20

*Times Picayune Publ'g Corp. v. United States Dep't of Justice*,
37 F. Supp.2d 472 (5th Cir. 1999)..................................................... 44-45

*Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*,
723 F.3d 640 (6th Cir. 2013).............................................................. 48

*Turner Broad. Sys. v. FCC*,
512 U.S. 622 (1994) .......................................................................... 31

*Twumasi-Ankrah v. Checkr, Inc.*,
954 F.3d 938 (6th Cir. 2020).............................................................. 48

*United States v. Marcavage*,
609 F.3d 264 (3d Cir. 2010)).............................................................. 11, 12

*United States v. Playboy Entm't Grp.*,
529 U.S. 803 (2000) .......................................................................... 25, 31, 38

*Viterbo v. Dow Chemical Co.*,
826 F.2d 420 (5th Cir. 1987).............................................................. 29

*Wallace v. FedEx Corp.*,
764 F.3d 571 (6th Cir. 2014).............................................................. 25

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) .......... 41
*Weinberg v. City of Chicago*,
310 F.3d 1029 (7th Cir. 2002) .......... 43
*Westfield Ins. Co. v. Tech Dry, Inc.*,
336 F.3d 503 (6th Cir. 2003) .......... 11
*XXL of Ohio, Inc. v. City of Broadview Heights*,
341 F. Supp.2d 765 (N.D. Ohio 2003) .......... 16
*Zauderer v. Office of Disciplinary Counsel*,
471 U.S. 626 (1985) .......... 44

***STATUTES AND RULES***

United States Constiution, amend. I / First Amendment .......... *passim*

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1343(a)(4) .......... 1

42 U.S.C. § 1983 .......... 1

42 U.S.C. § 2000cc .......... 1

Fed. R. Civ. P. 56(a) .......... 11

Fed. Evid. R 702 .......... 6, 25-28

6 Cir. R. 34(a) .......... 2

Ariz. Rev. Stat. § 16-1018(4) .......... 8

Calif. Elec. Code § 1D.N.H4291 .......... 8

Colo. Rev. Stat. §§ 1-13-712 & 31-10-1517 .......... 8

Hawaii Rev. Stat. § 11-121 .......... 8

Ohio Rev. Code § 1.01 .......... 13

Ohio Rev. Code § 3501.35(A)(4) .......... *passim*

Ohio Rev. Code § 3505.24 .......... 10

Ohio Rev. Code § 3599.01(A)(1) .......... 39

Ohio Rev. Code § 3599.01(A)(3) .......... 39

Ohio Rev. Code § 3599.02(D) .......... 39

Ohio Rev. Code § 3599.06 .......... 39

Ohio Rev. Code § 3599.20 .......... *passim*

Ohio Rev. Code § 3599.40 .......... 9-10

Tennessee Code 2-7-142 .......... 9

**TREATISES**

Bryan A. Garner *et al.*,
The Law of Judicial Precedent § 4, at 44 (2016) .......... 23

***ADMINISTRATIVE RULES, DIRECTIVES AND OPINIONS***

*Ky. Att'y Gen'l Opin. No. 16-007* .......... 9

31 Ky. Admin. Reg. 4:170 .......... 9

## JURISDICTIONAL STATEMENT

As this case maintains that that certain election laws in Ohio violate the First Amendment, the District Court's subject matter jurisdiction existed pursuant to 28 U.S.C. § 1331 as this civil action arose under the Constitution and laws of the United States; and pursuant to 28 U.S.C. § 1343(a)(4) in that this civil action sought to secure damages and equitable relief under Acts of Congress, specifically, 42 U.S.C. § 1983 and 42 U.S.C. §2000cc.

This Court possesses appellate jurisdiction pursuant to 28 U.S.C. § 1291 as this appeal is taken from a final judgment of the District Court. (R.53, *Judgment Entry*, PageID#1148). The District Court entered said final judgment on June 3, 2026, and Appellant timely appealed from that final judgment on June 9, 2026. (R.54, *Notice of Appeal,* PageID#1149).

## STATEMENT OF ISSUES

The primary issue is whether the District Court erred in granting summary judgment in favor of the Appellees and denying summary judgment in favor of Appellant. In so doing, the District Court concluded that a prohibition against displaying or publishing a photograph of a voted ballot, *i.e.*, a ballot selfie, withstood constitutional challenge under the First Amendment, as well as that the putative expert opinion offered by Appellee Secretary of State was proper to consider. Additionally, the District Court concluding that Appellee Cuyahoga

County Board of Elections was entitled to immunity under the Eleventh Amendment.

## REQUEST FOR ORAL ARGUMENT

Pursuant to 6 Cir. R. 34(a), Appellant Alison Kareem respectfully requests that oral argument be heard in this case. This appeal involves an issue involving fundamental constitutional rights and oral argument will help ensure all aspects of such issues are fully addressed. Additionally, the decision of the District Court is contrary to the holding of the First Circuit in *Rideout v. Gardner*, 838 F.3d 65 (1st Cir. 2016), and, thus, oral argument will aid this Court in its determination as to whether this Circuit will align itself with the decision of the First Circuit or create a circuit split.

## STATEMENT OF THE CASE

On October 27, 2020, Alison Kareem invoked the subject matter jurisdiction of the District Court through the filing of a *Complaint* (R.1, PageID#1-12), seeking declaratory and injunctive relief, as well as nominal damages, arising from Ohio's prohibition on core political speech in the form of the publication or dissemination of photograph of a voted ballot, *i.e.*, a ballot selfie. Ms. Kareem challenged, in the specific context of prohibiting ballot selfies, the constitutionality of Ohio Rev. Code § 3501.35(A)(4):

> (A) During an election and the counting of the ballots, no person shall do any of the following:… (4) Exhibit any ticket or ballot which the elector intends to cast….

and Ohio Rev. Code § 3599.20:

> No person shall attempt to induce an elector to show how the elector marked the elector's ballot at an election; or, being an elector, allow the elector's ballot to be seen by another, … with the apparent intention of letting it be known how the elector is about to vote…

Following discovery, the parties filed cross-motions for summary judgment. (R.24, *SOS's Motion for Summary Judgment,* PageID#94-131; R.26, *Cuyahoga Defendants' Motion for Summary Judgment*, PageID#323-336; R.27, *Kareem's Motion for Summary Judgment*, PageID#521-41). The District Court granted summary judgment in favor of the Defendants, concluding that Ms. Kareem lacked standing to pursue her claims. (R.40, *Memorandum/Opinion*, PageID#1062-75). On appeal, this Court reversed, concluding Ms. Kareem possessed standing to pursue the constitutional challenge herein. *Kareem v. Cuyahoga Cty. Bd. of Elec.,* 95 F.4th 1019 (6th Cir. 2024).

Upon remand, the parties agreed to renew their motions for summary judgment. (R.46, *Joint Motion to Renew Motions for Summary Judgment*, PageID# 1095-96.) After waiting more than two years for a decision and repeated commitments for a timely ruling (*see Minute Entry dtd 5 Feb 2025*; R.50, *Minute Entry dtd 10 Feb 2026*, PageID#1107), a petition for a writ of mandamus was filed

with this Court, seeking mandamus directing the District Court to issue a decision on the cross-motions. (R.51, *Petition for Writ of Mandamus*, PageID#1108-18).[1]

On June 3, 2026, the District Court issued its ruling on the cross-motions for summary judgment, denying Ms. Kareem's motion while granting the motions filed by the Defendants. (R.52, *Opinion/Order*, PageID#1119-47.)[2] The *Judgment Entry* (R.53, PageID#1148) was entered that same day. On June 9, 2026, Ms. Kareem timely appealed that final judgment. (R.54, *Notice of Appeal,* PageID#1149).

## STATEMENT OF THE FACTS

As part of early voting, Alison Kareem cast her ballot on October 20, 2020, for the general election that was being held on November 3, 2020. (R.28, *Kareem Declaration* ¶*2*, PageID#569). In casting her ballot, Ms. Kareem had a photograph taken of her and her marked ballot, desirous of posting such photograph on social media so as to not only make an affirmative declaration of having voted but, more importantly, to advocate to others through the use of that photograph to support and to vote for specific candidates, *i.e.*, the candidates Ms. Kareem had voted for as would be shown on her ballot selfie. (R.28, *Kareem Declaration* ¶*3*,

[1] In this Court, the petition for writ of mandamus was assigned Case No. 26-3505.

[2] As a result of issuing this ruling, the petition for writ of mandamus was ultimately dismissed due to mootness. (R.55, *Order* (Sixth Circuit), PageID#1150).

PageID#569). However, aware that it was illegal in Ohio to post or publish an image of a voted ballot, Ms. Kareem forwent posting her ballot selfie on social media (and she has continued to not do so at subsequent elections), lest she engage in conduct that clearly would violate state law. (R.28, *Kareem Declaration* ¶¶*4-7*, PageID#569-70).

The illegality under Ohio law of publishing or disseminating a ballot selfie is not in dispute. Both the Cuyahoga County Board of Elections and the Secretary of State have repeatedly pronounced the illegality under state law of posting or publishing a ballot selfie. (*See* R.26-1, *Perlatti Deposition, at 26:18-27:1, 27:16-27:19, 65:1-65:12 & Exhibit 3*, PageID#363-64, 402, 431; R.26-2, *West Deposition, at 25:11-26:11, 26:16-26:20 & Exhibit 2*, PageID#465-66, 504-09 ("[s]elfies with your ballot are not allowed… Ohio law does not allow these pictures"); *Perlatti Deposition* (Doc. No. 26-1), *Exh. 3* (PageID#431). In order to vindicate her constitutional rights under the First Amendment as it concerns posting or publishing a ballot selfie, Ms. Kareem commenced the present action, challenging the constitutionality of Ohio's prohibition on publishing or disseminating ballot selfies.

## SUMMARY OF ARGUMENT

Appellant contends the ballot selfie ban constitutes a content-based regulation of core political speech and, thus, the ballot selfie ban is subject to strict scrutiny. As the Secretary of State bears the burden of proving the constitutionality of the ban, Appellant maintains the summary judgment evidence does not meet or satisfy the requirements of strict scrutiny and, accordingly, the ballot selfie ban must be found to be unconstitutional.

Alternatively, even if the ballot selfie ban is subject to intermediate scrutiny as a content-neutral regulation of core political speech, the ban would still not meet constitutional muster as the ban: (i) burdens more speech than is necessary to advance any governmental interest; and (ii) does not leave open ample alternative channels for communications.

Related to the review of the cross-motions for summary judgment, Appellant also challenges the refusal of the District Court to reject putative expert testimony offered by the Secretary of State as part of its summary judgment evidence. Appellant maintains that such evidence does not satisfy the requirements of Evid. R. 702 or the *Daubert* standards.

Finally, Appellant asserts that the District Court erred in finding the Cuyahoga County Board of Elections was an arm of the state and, thus, entitled to Eleventh Amendment immunity. The District Court failed to treat the question of

such immunity as a question of federal law, not state law, and, thus, failed to consider the lack of such evidence as to the various factors which are considered on the question of Eleventh Amendment immunity.

## ARGUMENT

With the recent development of cellular telephones and cameras thereon, individuals desiring to take and disseminate photographs of their voted ballot, *i.e.,* that which has been given the appellation of ballot selfies, have become a phenomenon of the past few decades. As the publication and dissemination of a photograph concerning an election directly implicates core political speech protected by the First Amendment, *see McIntyre v. Ohio Elec. Comm'n*, 514 U.S. 334, 346-47 (1995)(speech designed to influence voters in an election is core political speech), those speakers who wished to engage in the marketplace of ideas through the dissemination of a ballot selfie find themselves confronted by prohibitions under various state laws, as well as pronouncements by election officials reiterating that the publication or dissemination of a ballot selfie is illegal.

Nonetheless, in response to the widespread desire of voters to disseminate ballot selfies, several states have enacted legislation that explicitly allows individuals to engage fully and robustly in core political speech through the

posting or dissemination of ballot selfies.[3] In other states, court decisions have struck down, as violative of the First Amendment, prohibitions on ballot selfies.[4] And in yet another state, ballots selfies were allowed through settlement of a federal civil rights lawsuit.[5] Thus, the ability of individuals in our country to engage in core political speech through the publication or dissemination of a ballot selfie is directly dependent upon the particular state whose ballot is at issue.[6]

---

[3] *See, e.g.*, Ariz. Rev. Stat. § 16-1018(4), enacted in 2015; Calif. Elec. Code § 1D.N.H4291, enacted in 2016; Hawaii Rev. Stat. § 11-121, enacted in 2016; Colo. Rev. Stat. §§ 1-13-712 & 31-10-1517, enacted in 2017. Copies of the signed legislation from these states are available at R.27-1 to R.27-4, PageID#542-56.

[4] *See Rideout v. Gardner*, 838 F.3d 65, 875-76 (1st Cir. 2016)(ballot selfie ban "reaches and prohibits innocent political speech by voters unconnected to the State's interest in avoiding vote buying or voter intimidation…. Indeed, several states have now expressly authorized ballot selfies, and those states have not reported an uptick in vote buying or voter intimidation"), *aff'g* 123 F. Supp.3d 218, 221 (D.N.H. 2015)(ballot selfie ban "is invalid because it is a content-based restriction on speech that cannot survive strict scrutiny"); *Indiana Civ. Liberties Union Found. Inc. v. Ind. Sec'y of State*, 229 F. Supp.3d 817, 828 (S.D. Ind. 2017)("Defendants are hereby permanently enjoined from enforcing Indiana Code § 3-11-8-17.5(b), which unconstitutionally prohibits voters from taking digital images or photographs of their ballots…and from distributing or sharing such images or photographs using social media or by any other means").

[5] *See* R.27-5, *Settlement Agreement*, *Crookston v. Benson*, W.D. Mich. Case No. 1:2016-CV01109, PageID#557-68.

[6] According to Ballotpedia, as of November 2024, 28 states permit ballot selfies; 15 states prohibit ballot selfies; four states permitted ballot selfies for absentee/mail-in ballot only; and the permissibility of ballots selfies was unclear in three states and the District of Columbia. *See* https://ballotpedia.org/Ballot_selfies (last visited September 8, 2026).

Even within the Sixth Circuit itself, there is broad disparity as to what is or is not permitted as it concerns ballot selfies. In Kentucky, ballot selfies are not prohibited. *See Ky. Att'y Gen'l Opin. No. 16-007* ("[w]e advise that Kentucky law does not prohibit a voter from taking a 'ballot selfie'"); *see also* 31 Ky. Admin. Reg. 4:170. While in Michigan, ballot selfies are now permitted through the settlement of a civil rights lawsuit similar to the present one. (*See* R.27-5, *Settlement Agreement*, *Crookston v. Benson*, W.D. Mich. Case No. 1:2016-CV01109, PageID#557-68.) And, in Tennessee, while Tennessee Code 2-7-142 prohibits voters from taking any photos or videos inside polling locations (which would conceivably include taking a ballot selfie), there is no law prohibiting the publication of ballot selfies taken at other locations (such as one's house if voting by mail).

Yet, in reliance upon two statutes, the State of Ohio continues to make it universally illegal for individuals to publish or otherwise disseminate a ballot selfie:

> During an election and the counting of the ballots, no person shall do any of the following … [e]xhibit any ticket or ballot which the elector intends to cast.

Ohio Rev. Code § 3501.35(A)(4).[7]

---

[7] Ohio Rev. Code § 3599.40 provides that "whoever violates any provision of Title XXXV of the Revised Code, unless otherwise provided in such title, …is

(*continued on next page*)

> No person …, being an elector, [shall] allow the elector's ballot to be seen by another, except as provided by section 3505.24 of the Revised Code, with the apparent intention of letting it be known how the elector is about to vote….
>
> Whoever violates this section is guilty of a felony of the fifth degree.

Ohio Rev. Code § 3599.20.[8]

On cross-motions for summary judgment, the District Court concluded that Ohio's continued ban on the publication or dissemination of ballot selfies constituted content-neutral regulation of speech that satisfied the applicable requirements of intermediate scrutiny. Additionally, the District Court held that the Cuyahoga County Board of Elections was entitled to Eleventh Amendment immunity. As developed below, the District Court erred as to its analysis and conclusion with respect to both matters.

## I. Disposition of cross-motions for summary judgment are subject to *de novo* review.

An appellate court reviews a district court's determination on cross-motions for summary judgment *de novo*. *Snyder v. Finley & Co.*, 37 F.4th 384, 387 (6th

---

guilty of a misdemeanor of the first degree." There is not specific penalty otherwise set for the for Ohio Rev. Code § 3501.35(A)(4).

[8] Ohio Rev. Code § 3505.24 allows a voter, who is unable to mark his or her ballot by reason of blindness, disability, or illiteracy, to be accompanied by a person of the voter's choosing to assist the voter in marking the ballot.

Cir. 2022). "When reviewing cross-motions for summary judgment, [an appellate court] must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

As is well-established, "[s]ummary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party," there is "no genuine issue as to any material fact" and the movant is entitled to judgment as a matter of law. *CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d. 235, 241-42 (6th Cir. 2009); *see* Fed. R. Civ. P. 56(a).

## II. The constitutional challenge to the statutes at issue simply concerns an as-applied challenge to the extent such statutes are applied so as to prohibit the publication or dissemination of ballot selfies.

The Supreme Court has recognized that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Federal Elec. Comm'n*, 558 U.S. 310, 331 (2010). Nonetheless, "[a] facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). In contrast, "[a]n as-applied claim requires a challenger to show only that a law violates the

Constitution as applied to the specific conduct that the challenger seeks to undertake." *Doe v. Burlew*, 165 F.4th 525, 529 (6th Cir. 2026); *accord Marcavage*, 609 at 273 ("[a]n as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right").

In this case, Ms. Kareem is not facially challenging the constitutionality of Ohio Rev. Code § 3501.35(A)(4) and Ohio Rev. Code § 3599.20. Instead, Ms. Kareem is clearly challenging those statutes only as applied to the specific conduct she seeks to undertake, *i.e.*, publishing or disseminating a ballot selfie. As explained to the District Court:

> [Ms. Kareem] challenges the statutes to the extent they prohibit the taking and publication of a ballot selfie. Thus, she does not seek to invalidate the statutes themselves in any and all instances (unless the only prohibition of the statute is to prohibit ballot selfies). Thus, at a minimum, Ms. KAREEN brings an as-applied challenged, *i.e.*, to the instances where she is personally prohibited from publishing her ballot selfie, both previously and in the future; but she also seeks, as the recipient of speech of others, relief that ensures the statutes do not prohibit others from taking or publishing their ballot selfie.

(R.27, *Kareem's Motion for Summary Judgment, at 4 n.4*, PageID#521-41.)

Yet, in ruling on the cross-motions for summary judgment, the District Court did not undertake its constitutional analysis as to the specific conduct at issue, but, instead, effectively only considered the statutes facially, including efforts to regulate the conducting of elections in general. (*See* R.52, *Opinion/Order, at 19*,

PageID#1137-38 ("[t]he Court does not read the statutory language as only restricting marked ballots, as Plaintiff argues…. The Ohio laws at issue, naturally are limited to the election process…. The subject matter of § 3501.35 ranges from loitering at polling places and hindering or delaying electors to solicitation of votes and tendering ballots to non-election officials. This is all in addition to prohibiting the exhibition of one's ballot, which §3599.20 also restricts")).[9]

In so doing, the District Court failed to appreciate that an as-applied challenge "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006); *see McGuire v. Reilly,* 386

---

[9] As part of its facial assessment of the statutes, the District Court also found some significance in the title ascribed to the statutes, as well as other provisions under those titles. (R.52, *Opinion/Order*, *at 5-6*, PageID#1123-24 ("Ohio Revised Code § 3501.35(A)(4) is part of a comprehensive statute entitled, 'No Loitering or congregating near polling places'"); R.52, *Opinion/Order*, *at 7-8*, PageID#1125-26 ("[Ohio Rev. Code § 3599.20] was part of a comprehensive set of statutes entitled 'Public Elections,' designed to illegalize intimidation tactics…. In 1953, this law was published in the new Ohio Revised Code and renamed to 'Prohibitions concerning ballots generally'")). But Ohio law declares unequivocally that statutes' titles "do not constitute any part of the law." Ohio Rev. Code § 1.01. Thus, the Ohio Supreme Court has declared statutes' titles as being "irrelevant to the substance of a code provision." *Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, 70 Ohio St.3d 281, 284, 638 N.E.2d 991, 1994-Ohio-295; *accord State v. Beener,* 54 Ohio App.2d 14, 16, 374 N.E.2d 435 (2d Dist. 1977)(resort to a title in interpreting a statute "is unnecessary and improper"). Thus, there was no basis for the District Court to even consider the title of the statutes.

F.3d 45, 61 (1st Cir. 2004)("the as-applied challenge is…an attempt to 'specify' the law by freshly testing its constitutionality in one particular fact situation"); *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 430-31 (2006)(compelling interest test focuses on interest as applied to particular plaintiffs).

When appropriate consideration is given the statutes and how they apply in the context of prohibiting the publication or dissemination of a photograph of a marked ballot, *i.e.*, a ballot selfie, the statutes at issue cannot withstand constitutional challenge as-applied. For this reason, the judgment of the District Court must be reversed and the case remanded with instructions to grant summary judgment in favor of Ms. Kareem and for further proceedings.

## III. Ohio's ban on ballot selfies violates the First Amendment by censoring core political speech in and about elections.

In the First Amendment context, the "normal inquiry…is, first, to determine whether a regulation is content based or content neutral, and then, based on the answer to that question, to apply the proper level of scrutiny." *City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994)(O'Connor, J., concurring)(citations omitted). "'Content-based laws – those that target speech based on its communicative content – are presumptively unconstitutional and may be justified only if' they satisfy strict scrutiny." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 471

(2025)(quoting *Reed v. Town of Gilbert*, 576 U. S. 155, 163 (2015)). Under strict scrutiny, the government must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171. Content-neutral restrictions are subject to intermediate scrutiny, which requires that the government establish that such restrictions are "narrowly tailored" to "serve a significant governmental interest" and that they "leave open ample alternative channels for communication of the information." *Phelps-Roper v. Strickland*, 539 F.3d 356, 361-62 (6th Cir. 2008)(quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

**A. A ballot selfie ban is a content-based restriction on speech.**

A ballot selfie ban is a content-based regulation of core political speech. Firstly, the ban prohibits the publication or dissemination of a particular type of expression, *i.e.*, photographs of a marked ballot. Secondly, the ban also seeks to regulate speech concerning a specific topic or subject matter, *i.e.*, speech in and about an election concerning candidates and issues appearing on the ballot.

"Deciding whether a restriction is content neutral or content based is no simple task, as 'not all content-based regulations are alike.'" *Hines v. Pardue*, 117 F.4th 769, 785-86 (5th Cir. 2024)(Ramirez, J., concurring)(quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 429 (1992)(Stevens, J., concurring in the judgment)). In making such a determination, it is important to appreciate that "viewpoint-

neutrality is not equivalent to content-neutrality and the difference between the two concepts is critical in a first amendment analysis." *Baugh v. Judicial Inquiry & Review Comm'n*, 907 F.2d 440, 444 (4th Cir. 1990); *accord XXL of Ohio, Inc. v. City of Broadview Heights*, 341 F. Supp.2d 765, 780 (N.D. Ohio 2003)("[a] regulation is not content-neutral merely because it does not discriminate between viewpoints on a particular subject").

In *Reed v. Town of Gilbert*, 576 U.S 155 (2015), the Supreme Court clarified the law concerning the various ways that governmental statutes and regulations can constitute a content-based regulation of speech. In so doing, the Court identified four distinct ways regulations or statutes can constitute a content-based regulation of speech:

- "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 163.
- A "more subtle" form of content-based regulation is "defining regulated speech by its function or purpose." *Id.* at 163.
- "[A] separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys.''" *Id.* at 164 (quoting *Ward*, 491 U.S. at 791).
- "[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 169.

A ban on the publication or dissemination of ballot selfies is content-based restrictions on speech as such a prohibition is based on the topic discussed, the idea or message expressed, and the subject matter, *i.e.*, a photograph of a marked ballot identifying the candidates and issues the person supported and disseminated or published during an election. Additionally, consistent with the express language of the statutes by which a ballot selfie ban is imposed, such a ban only applies either "[e]ither during an election and the counting of the ballots," Ohio Rev. Code § 3501.35(A)(4), or when an elector is "about to vote", Ohio Rev. Code § 3599.20. Accordingly, such a ban applies only while debate is occurring in and about the election[10] and such ban concerns speech regarding the candidates and issues appearing on the ballot.

Not only does a ballot selfie ban meet the criteria under *Reed* to be considered a content-based prohibition on core political speech, but such a ban is comparable to the content-based restriction on speech this Court found in *Susan B. Anthony List v. Driehaus*, 814 F.3d 466 (6th Cir. 2016). In *Susan B. Anthony List*, this Court applied the standards of *Reed* and held that, because Ohio's political false-statements laws "only govern speech about political candidates during an

[10] Consistent with the language of the statutes, after the votes have been counted and the results are known, a person is apparently free to publish their ballot selfie as the statutory provisions do not so restrict such publication at that time.

election", such prohibitions "are content-based restrictions focused on a specific subject matter." *Id.* at 473. Similarly, a ballot selfie only addresses speech about political candidates and ballot issues during an election and a ban on such speech restricts speech about a topic and subject matter comparable to that in *Susan B. Anthony List*. Thus, consistent with *Reed* and *Susan B. Anthony List*, ballot selfie bans are clearly content-based restrictions on speech. *See also Kohls v. Bonta*, 752 F. Supp.3d 1187 (E.D. Calif. 2024)(state law "specifically targets speech within political or electoral content pertaining to candidates, electoral officials, and other election communication, making it a content-based regulation that seeks to limit public discourse").

Additionally, it should be recognized that all courts, save the District Court in this case, that have made *a definitive determination* on whether bans on ballot selfies are content-based or content-neutral, have concluded that such bans are content-based restrictions on core political speech. *See Indiana Civ. Liberties Union Found. Inc. v. Indiana Sec'y of State*, 2015 U.S. Dist. LEXIS 182116, at *9 (S.D. Ind. Oct. 19, 2015)("[t]he required examination of the content of the image in order to enforce the terms of this statute plainly demonstrates its content-based nature"); *Indiana Civ. Liberties Union Found. Inc. v. Indiana Sec'y of State*, 229 F. Supp.3d 817, 824 (S.D. Ind. 2017)("we arrive at the same conclusion we reached in our October 19, 2015 Order, namely, that [state's ballot selfie ban] is a content-

based restriction subject to strict scrutiny"); *Rideout v. Gardner*, 123 F. Supp.3d 218, 229 (D.N.H. 2015)("the law under review is content based on its face because it restricts speech on the basis of its subject matter. The only digital or photographic images that are barred…are images of marked ballots that are intended to disclose how a voter has voted…[T]he law is plainly a content-based restriction on speech because it requires regulators to examine the content of the speech to determine whether it includes impermissible subject matter"), *aff'd*, 838 F.3d 65 (1st Cir. 2016); *Silberberg v. Board of Elections of N.Y.*, 272 F. Supp.3d 454, 474 (S.D.N.Y. 2017)("the challenged statute regulates speech based on its content, as it 'applies to particular speech because of the topic discussed or the idea or message expressed'" (quoting *Reed*, 576 U.S. at 163)).[11] This Court should

[11] In other cases, the courts did not make definitive determinations on whether ballot selfie bans were content-based or content-neutral regulation of speech. In certain cases, a determination was not necessary as such bans did not even satisfy intermediate scrutiny applicable to content-neutral regulations. *See Rideout*, 838 F.3d at 72 n.4 ("[a]s the statute fails even intermediate scrutiny, we need not resolve the question of whether [the statute] is a content-based regulation"); *Hill v. Williams*, 2016 U.S. Dist. LEXIS 155460, at *28-29 (D. Colo. Nov. 4, 2016)("[f]or purposes only of resolving these motions for preliminary injunction, the Court applies the intermediate level of scrutiny applicable to a content neutral law. The Court reserves determination as to whether the law is content-neutral or content-based until its ruling on the merits"). And, as developed *infra*, *pages 23-26,* in *Crookston v. Johnson*, 841 F.3d 396 (6th Cir. 2015), this Court simply stayed a preliminary injunction pending appeal based upon the *Purcell* principle. It was only in *dicta* that this Court addressed, not a ballot selfie ban, but, instead, a "ban on photography at the polls" which it suggested "*seems to be* a content-neutral regulation," *id.* at 400 (emphasis added), though this Court acknowledged it was

(*continued on next page*)

likewise conclude that the ballot selfie ban imposed by Ohio constitutes a content-based restrictions on core political speech as developed above and consistent with *Reed* and *Susan B. Anthony List*.

* * * * *

In reaching its conclusion that a ballot selfie ban imposed was content-neutral, the District Court initially reasoned that it did "not read the statutory language as only restricting marked ballots." (R.52, *Opinion/Order, at 19*, PageID#1127.) It then noted that "[t]he subject matter of § 3501.35 ranges from loitering at polling places and hindering or delaying electors to solicitation of votes and tendering ballots to non-election officials[,] … in addition to prohibiting the exhibition of one's ballot, which § 3599.20 also restricts." (R.52, *Opinion/Order, at 19-20*, PageID#1127-28.) But the District Court should not have given any import to other divisions of R.C. 3501.35 that are not even at issue in this case and, thus, irrelevant. Furthermore, such language by the District Court demonstrates an outright failure to appreciate that this case involves an *as applied* challenges as to R.C. 3501.35(A)(4) and R.C. 3599.20 to the extent such statutes prohibit ballot selfies. As noted above, while a facial attack tests a law's constitutionality based

"not resolving the merits of the case." *Id.* at 401; *see also id.* at 403 (Cole, J, dissenting)("Michigan's restrictions fail even intermediate scrutiny, I need not resolve whether these restrictions are content based or content neutral").

on its text alone independent of the facts or circumstances of a particular case, an as-applied challenge is concerned as to a statute's application to a particular person or particular circumstances. *See pages 11-14*, *supra.* Thus, the District Court essentially, though improperly, considered the case more in line with a facial challenge, as opposed to the as applied challenge actually brought.

The District Court also erred when it failed to appreciate the distinction between viewpoint neutrality and content neutrality. In support of its conclusion that the statutes at issue (not ballot selfie bans) were content neutral, the District Court indicated that the statutes were "not adopted because of any disagreement with any other voter's message" and "do not restrict ballot selfies because of any particular candidate, party, idea, referendum, initiative, levy, or other asserted political speech. They apply equally to partisan and non-partisan matters." (R.52, *Opinion/Order, at 20*, PageID#1138.) Yet, that to which the District Court referred goes to the question of whether viewpoint discrimination exists. *See Collins v. Putt*, 979 F.3d 128, 142 (2d Cir. 2020)("the 'principal inquiry' in determining whether the government has engaged in viewpoint discrimination 'is whether the government has adopted a regulation of speech because of disagreement with the message it convey'" (quoting *Ward*, 491 U.S. at 791); *Soltysik v. Padilla,* 910 F.3d 438, 459 (9th Cir. 2018)("[w]e characterized the statute as 'viewpoint neutral' because it applied to all candidates equally"). But, as

noted above, "viewpoint-neutrality is not equivalent to content-neutrality and the difference between the two concepts is critical in a first amendment analysis." *Baugh*, 907 F.2d at 444.

Finally, as additional support for its conclusion that that a ballot selfie ban is content-neutral, the District Court summarily declared it found "the reasoning of [the opinions in] *Crookston* and *Silberberg* most compelling." (R.52, *Opinion/Order, at 19*, PageID#1137 (referencing this Court's motion panel decision in *Crookston*, 841 F.3d 396 (6th Cir. 2015), and *Silberberg v. Board of Elections of N.Y.*, 272 F. Supp.3d 454, 474 (S.D.N.Y. 2017)). But such reliance upon either of these two cases is clearly misplaced.

Any reliance upon *Silberberg* is inapposite considering that, in *Silberberg*, the court explicitly found "that the challenged statute regulates speech based on its content, as it 'applies to particular speech because of the topic discussed or the idea or message expressed'" *Silberberg*, 272 F. Supp.3d at 474.[12] Thus, *Silberberg* directly supports the argument of Ms. Kareem and repudiates the conclusion of the District Court.

[12] The statute at issue in *Silberberg* provided that "[a]ny person who … [s]hows his ballot after it is prepared for voting, to any person so as to reveal the contents … is guilty of a misdemeanor." 272 F. Supp.3d at 468 (quoting N.Y. Elec. Law § 17-130(10)).

As for reliance upon *Crookston*, the District Court failed to consider the procedural posture of that case, the distinction between the holding versus *dicta* in the opinion, and what the *dicta* it relied upon actually stated. "Not all text within a judicial decision serves as precedent." Bryan A. Garner *et al.*, The Law of Judicial Precedent § 4, at 44 (2016). "The holding of a decision, which has precedential effect, is to be contrasted with *dicta*, which does not have precedential effect." *Michigan Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787, 792 (6th Cir. 2014). Yet, the District Court relied solely upon *dicta* from *Crookston* to drive its conclusion that the ballot selfie ban is content-neutral, oblivious to the narrow scope and actual holding in *Crookston.*

*Crookston* involved a challenge to a ballot selfie ban premised upon a Michigan law that provided that, if a marked ballot was shown to any person, the ballot would not be counted, as well as a challenge to instructions issued by the secretary of state prohibiting the use of cameras in the polling places. After the District Court issued a preliminary injunction against enforcement of the statute and the rule, a motions panel of this Court considered the narrow issue of whether to issue a stay of the preliminary injunction pending appeal. *Crookston*, 841 F.3d at 398.

Ultimately, the motions panel in *Crookston* granted the stay premised upon a very narrow basis, *i.e.*, the unexplained delay until the eve of the election before

the lawsuit was filed. *Id.* at 398 ("[t]he first and most essential [reason to issue the stay] is that Crookston offers no reasonable explanation for waiting so long to file this action"). Recognizing that there was inadequate time to resolve factual disputes and legal disputes (which would include whether a content-neutral or content-based restriction was involved), this Court concluded the *Purcell* principle – the idea is that, at the eleventh hour, courts will not disrupt election processes and procedures absent a powerful reason for doing so – justified issuance of the stay. *See id.* at 399 ("the tardiness of Crookston's motion for a preliminary injunction alone requires us to reject it"). That alone was the basis for the issuance of the stay by the motions panel in *Crookston*.

But instead of appreciating this, the District Court relied upon *dicta* in *Crookston* and then misread that *dicta*. Claiming *Crookston* declared a ballot selfie ban "appeared to be a content-neutral regulation" (R.52, *Opinion/Order, at 17*, PageID#1135), the District Court failed to appreciate such *dicta* in *Crookston* was specifically directed to the regulatory ban on photography within a polling place, not a ballot selfie ban. *See Crookston,* 841 F.3d at 399 ("[t]he Secretary's ban on photography at the polls seems to be a content-neutral regulation"). As for the nature of a ballot selfie ban itself, the motions panel in *Crookston* simply opined (again in *dicta*) that "even if the ballot-exposure ban is not content neutral, the Supreme Court has upheld content-specific speech restrictions in polling places."

*Id.* at 400. Not only is this a far cry from a definitive determination or adjudication as to whether ballot selfie bans are content-based or content-neutral, but the motion panel's entire *dicta* on the subject of ballot selfie bans was couched in terms of whether such a ban could be effectuated in the public forum of a polling place; the motions panel said nothing about efforts to universally ban the publication or dissemination of a ballot selfie itself. Thus, the District Court's reliance upon *Crookston* to conclude ballot selfie bans are content-neutral is entirely misplaced.[13]

### B. The District Court improperly accepted as evidence putative expert testimony which did not satisfy the requirements of Evid. R. 702 or *Daubert.*

"When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 816 (2000). But before addressing whether the Secretary of State has satisfied its constitutional burden (regardless of whether the ballot selfie ban is

[13] As for this Court's present consideration of *Crookston*, not only is *dicta* not precedent but, it must be appreciated that motions panel decisions "are summary in character, made often on a scanty record, and not entitled to the weight of a decision made after plenary submission." *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991). Thus, "the decisions of motions panels are generally interlocutory in nature (and, thus, not strictly binding upon subsequent panels)." *Wallace v. FedEx Corp.*, 764 F.3d 571, 583 (6th Cir. 2014). And while some deference may be afforded to decisions by motions panels, this Court has "never explained the amount of deference due" to a motions panel decision, highlighting that "other circuits do not defer to similar interlocutory rulings." *Kentucky v. EPA*, 123 F.4th 447, 457-58 (6th Cir. 2024).

content-based or content-neutral), consideration must be given to the effort of the Secretary to rely upon the so-called "expert" report offered by Professor Scott Adler. (*See* R.24-3, *Adler Report*, PageID#233-65.) Despite objection that such "expert" testimony was inadmissible and did satisfy the *Daubert* factors (R.33, *Plaintiff's Opposition to Motions for Summary Judgment, at 26-35*, PageID#634-43), the District Court refused to discount or exclude such evidence, finding, with very little analysis, that such testimony drew "from a range of historical sources and contemporary research related to election privacy and integrity, which [was] sufficiently more than anecdotal evidence," and, therefore, such "methodology is an accepted approach in the field of political science, which reliably supports his opinion." (R.52, *Opinion/Order*, *at 25-26*, PageID#1144-45.)

This Court reviews a decision "decision to admit expert testimony under [Evidence] Rule 702 and *Daubert* for abuse of discretion." *Bureau v. State Farm Fire & Cas. Co.*, 129 Fed. Appx. 972, 974 (6th Cir. 2004). However, district court abuses its discretion if it bases "its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

Under *Daubert*, the trial court must determine whether evidence proffered under Rule 702 "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

A key consideration is "whether the reasoning or methodology underlying the testimony is sufficiently valid." *Id.* at 592-93. Thus, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

While there is no "definitive checklist or test" for meeting the standard of Rule 702, a number of factors typically "bear on the inquiry" as to whether expert testimony may properly be admitted, including: whether the theory or method in question "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has a "known or potential rate of error," and whether the theory or technique enjoys "general acceptance" in the "relevant scientific community." *Daubert*, 509 U.S. at 593-94. Additionally, this Court has also outlined a number of "[r]ed flags that caution against certifying an expert." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). These include "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Id.*

In this case, the District Court abused its discretion in not rejecting the report or testimony from Professor Adler from consideration. Under the guise of offering expert testimony, all that Professor Adler offered were simply a few historical anecdotes from which he then advanced his personal opinion that there should be

an absolute ban on ballot selfies. As a putative expert in the field of political science, Professor Adler acknowledged "we use the scientific method in our study of politics" whereby a hypothesis is posed and then evidence is brought to test that hypothesis. (R.33-1, *Adler Deposition, at 17:4-17:18*, PageID#673). Yet, with respect to his testimony herein, he repeatedly acknowledged "I wasn't bringing the scientific method to this report." (R.33-1, *Adler Deposition, at 104:2-104:5*, PageID#760; *see also* R.33-1, *Adler Deposition, at 104:8-104:9*, PageID#760 ("I was not testing a hypothesis with data"). And Professor Adler's failure to utilize any scientific method is further revealed in light of his failure to even consider or appreciate the lack of any impact that the recent legalization of ballot selfies in other states has had on vote buying or voter intimidation. (R.33-1, *Adler Deposition, at 102:8-102:14 & 102:25-104:9*, PageID#758-60.)

Other deficiencies in the basis for Professor Adler to testify as an expert under Rule 702 and *Daubert* include: (i) never submitting the *Adler Report* or its conclusions to any review or criticism by colleagues (R.33-1, *Adler Deposition, at 64:10-64:13*, PageID#720); (ii) relying upon anecdotal evidence as the basis for his opinion, *see Istvan v. Honda Motor Co.*, 455 F. App'x 568, 572 (6th Cir. 2011)(anecdotal evidence "is plainly not befitting of an expert's opinion"); (and iii) the failure to even consider or assess other potential remedies to prevent vote

buying or voter intimidation (R.33-1, *Adler Deposition, at 81:6-81:13, 81:23-82:10, 114:17-115:8*, PageID#737&770-71.)

Instead, by his own admission, Professor Adler was simply offering his personal, subjective opinion against ballot selfies and the Secretary was improperly packaging it as expert testimony. (R.33-1, *Adler Deposition, at 101:14-102:4*., PageID#757-58.) "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987). The District Court clearly abused its discretion in accepting the testimony and report of Professor Adler as part of the summary judgment evidence and, accordingly, as part of this Court's *de novo* review of the cross-motions for summary judgment, such evidence should not be considered.

### C. In light of the ballot selfie ban being a content-based restriction on core political speech, such a ban does not meet the requirements of strict scrutiny.

"When a State places a severe or significant burden on a core political right, like here, it faces a 'well-nigh insurmountable' obstacle to justify it." *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 380 (6th Cir. 2008). In such a situation, this Court "will find a First Amendment violation unless the government can satisfy 'strict scrutiny' by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Brown v. Yost*, 103 F.4th 420, 442 (6th Cir. 2024)(quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S.

507, 525 (2022)); *see Reed*, 576 U.S. at 163 ("[c]ontent-based laws … are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests"); *Citizens United*, 558 U.S. at 340 (strict scrutiny "requires the Government *to prove* that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest" (emphasis added)).

In order to satisfy this burden, governmental defendants must, *inter alia*, "come forward with some *quantum of evidence*, beyond [their] own belief in the necessity for regulation, that the harms [they] seek[] to remedy are concrete and that [their] regulatory regime advances the stated goals." *Pagan v. Fruchey*, 492 F.3d 766, 771 (6th Cir. 2007)(*en banc*)(emphasis added). "Reliance on suppositions and speculative interests is not sufficient to justify a severe burden on First Amendment rights." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 593 (6th Cir. 2006).[14]

[14] Amazingly, the Secretary minimizes any First Amendment interest in the use of ballot selfies to engage in core political speech. Even though "discussions on candidate elections lie 'at the heart of political debate'," and that such "speech interests are at their zenith," *Austin v. Michigan State Chamber of Commerce*, 494 U.S. 652, 676 (1990)(Brennan, J, concurring), the Secretary went so far as to argue to the District Court that First Amendment interests are "at a near nadir when it comes to using ballots for self-expression." (R.24, *SOS's Motion for Summary Judgment, at 28*, PageID#126.)

Additionally, consistent with the requirements of strict scrutiny, the Secretary must also establish the ballot selfie ban satisfies the requirement of being narrowly tailored to advance any compelling governmental interests. "Narrow tailoring for strict scrutiny means that the law must be 'the least restrictive means' of achieving the objective." *NetChoice, LLC v. Yost*, 180 F.4th 268, 286 (6th Cir. 2026)(quoting *Free Speech*, 606 U.S. at 471)(quoting *McCullen v. Coakley*, 573 U.S. 464, 478 (2014)).

"That the Government's asserted interests are important in the abstract does not mean, however, that the [challenged government regulation] will in fact advance those interests. When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply 'posit the existence of the disease sought to be cured.' It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 664 (1994)(quoting *Quincy Cable TV, Inc. v. FCC*, 768 F.2d 1434, 1455 (D.C. Cir. 1985)); *accord Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 799 (2011)("[t]he State must specifically identify an actual problem in need of solving and the curtailment of free speech must be actually necessary to the solution. That is a demanding standard" (emphases added and internal citations omitted)). Conclusory statements are not enough, *Playboy*, 529 U.S. at 822, and

"[m]ere speculation of harm does not constitute a compelling interest." *Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 530, 543 (1980).

The Secretary of State cited the prevention of vote buying or voter intimidation as the compelling interests supposedly justifying an absolute ban on ballot selfies. (*See* R.30, *SOS's Opposition to Motion for Summary Judgment, at 4-5*, PageID#581-82). And, then the Secretary summarily maintained that strict scrutiny was satisfied because "[p]rohibiting ballot selfies is the only effective means of fully counteracting vote buying and voter intimidation, particularly in the Internet age." (*See* R.30, *SOS's Opposition to Motion for Summary Judgment, at 6*, PageID#583). But, other than such conclusory *ipse dixit*, the Secretary has not offered any evidence actually establishing such an interest as it actually relates to the prohibition of the use of ballot selfies.

Implicitly acknowledging the lack of actual evidence to constitutionally justify the ballot selfie ban, the Secretary repeatedly sought to find solace from the Supreme Court's decision in *Burson v. Freeman*, 504 U.S. 191 (1992). Attempting to bootstrap the lack of evidence by which strict scrutiny was satisfied in *Burson*, the Secretary repeatedly harkened back to language from *Burson*. (*See* R.30, *SOS's Opposition to Motion for Summary Judgment, at 5*, PageID#582 ("[l]ike in *Burson*, '[t]he long, uninterrupted[] … use of [Ohio's ballot-exposure] statutes makes it

difficult for [the] State[] to come forward with the sort of proof the [Plaintiff] wishes to require" (quoting *Burson*, 504 U.S. at 200); R.30, *SOS's Opposition to Motion for Summary Judgment, at 17*, PageID#594 (criticizing the decision in *Rideout*, contending "[t]he [First Circuit] never considered *Burson*'s observation that States cannot provide quantifiable evidence on these points when statutes have been on the books for a hundred years").[15] But *Burson* is easily distinguishable and does not allow the Secretary to escapes from having to prove that an absolute ballot selfie ban satisfies the requirements of strict scrutiny.

Firstly, *Burson* involved political speech being analyzed under public forum analysis and, in particular, speech in the specific geographic area in and around a polling place on election day; *Burson* did not involve the ability of citizens to engage in core political speech through publishing or disseminating ballot selfies. As explained by the First Circuit in striking down a similar ballot selfie ban in New Hampshire:

[15] In seeking summary judgment, the Secretary only made a passing reference to *Burson* (*see* R.24, *SOS's Motion for Summary Judgment, at 28 n.3* PageID#126), but developed no argument therein vis-à-vis Burson and, thus, clearly failed to meet the burden of demonstrating entitlement to summary judgment in his favor. It was only in the *SOS's Response in Opposition to Plaintiff's Motion for Summary Judgment, at 5-6 & 17* (R.30, PageID#583-83 & 594) and in the *SOS's Reply in Support of Motion for Summary Judgment, at 16-18* (R.34, PageID#975-77) that the Secretary actually developed any argument concerning *Burson.*

> The discussion in *Burson* of the long history of regulating polling places and the location of elections makes clear that the interest at stake in *Burson* centered on the protection of physical election spaces from interference and coercion.… The intrusion on the voters' First Amendment rights is much greater here than that involved in *Burson*. [The ballot selfie ban] does not secure the immediate physical site of elections, but instead controls the use of imagery of marked ballots, regardless of where, when, and how that imagery is publicized

*Rideout*, 838 F.3d at 73 (1st Cir. 2016). And, thus, the First Circuit properly recognized "*Burson* is obviously distinguishable." *Id.*

This notwithstanding, the Secretary doubled down on *Burson* when he maintained that the longevity of the ballot exposure prohibition "makes it difficult" for him to come forth with any proof so as to constitutionally justify a ban on ballot selfies. (R.30, *SOS's Opposition to Motion for Summary Judgment, at 5*, PageID#582). Of course, the Secretary does not put forth what effort – if any – he has undertaken to develop any evidence as to the impact of ballot selfies on vote buying or voter intimidation. Instead, the Secretary only offers a self-serving, lackadaisical declaration in an illusive hope that this Court will allow him to find solace in *Burson*.

Furthermore, the present day does not preclude the Secretary from "put[ting] on witnesses who can testify as to what would happen without [the ballot selfie ban]." *Burson*, at 208. As the Supreme Court recognized in *Burson*, "all 50 States limit access to the areas in or around polling places," 504 U.S. at 206, with "[t]he majority of [such] laws were adopted originally in the 1890's." *Id.* at 208. Thus,

in light of the long-standing universality of the exclusion of speech around a polling place, the Supreme Court excused in *Burson* the lack of actual evidence as to the actual harms being prevented and the attendant state interests being advanced by the statute.

But unlike the long-established campaign-free zones in and around polling places, the use of ballot selfies is not historically nor universally prohibited across the nation. In fact, as noted above, a majority of the states now freely allow the use of ballot selfies by which their citizens regularly engage in core political speech in and about elections. *See pages 8-9*, *supra.* Thus, there can readily be real-world, present-day evidence as to whether ballot selfies have an actual impact on vote buying or voter intimidation necessitating the regulation or outright prohibition thereof. As the First Circuit recognized, "[d]igital photography, the internet, and social media are not unknown quantities – they have been ubiquitous for several election cycles, without being shown to have the effect of furthering vote buying or voter intimidation." *Rideout¸* 838 F.3d at 73; *accord Rideout*, 123 F. Supp.3d at 233 (as "the technology [the law] targets has been in use for many years, it is reasonable to expect that if the problem the state fears were real, it would be able to point to some evidence that the problem currently exists. Under these circumstances, both history and common sense undermine rather than support the state's contention that vote buying and voter coercion will occur if the

state is not permitted to bar voters from displaying images of their completed ballots").

Additionally, despite ballots selfies long being permitted in some states, the Secretary's own putative expert could not cite to any evidence of vote buying or voter intimidation occurring any wherein in the United States because of the use of ballot selfies (including in his home state of Colorado which legalized ballot selfies in 2017). (R.33-1, *Adler Deposition*, *at 51:9-51:12 & 112:13-114:16*, PageID#707 & 768-70). "The fact that a large percentage of Americans own and use smartphones to take and share digital images flies in the face of the State's inability to produce a single instance of [ballot selfies] having been used to facilitate vote buying or voter coercion." *Indiana Civ. Liberties Union*, 229 F. Supp.3d at 825. As has already been recognized, a ban on the publication or dissemination of ballot selfies "is a solution in search of a problem." *Id.*

Excusing the failure of the Secretary to provide actual evidence tying ballot selfies to vote buying or voter intimidation, the District Court took it upon itself to develop *sua sponte* citations to a few isolated examples of which it characterized as "issues with vote buying and voter intimidation", as well as *sua sponte* claiming "courts in Ohio have addressed a plethora of relevant legal challenges and voting issues." (R.52, *Opinion/Order*, *at 21 & 22*, PageID#1139-40.) Not only were

these few cases cited by the District Court over decades old, but none involved issues related to ballot selfies or anything comparable.

But even if these isolated incidents which the District Court *sua sponte* identified support a real threat concerning vote buying or voter intimidation because of ballot selfies, there is no indication the present ban is narrowly tailored, *i.e.*, that the law is be "'the least restrictive means' of achieving the objective." *NetChoice*, 180 F.4th at 286. Only offering conclusory *ipse dixit,* the Secretary maintained that "[p]rohibiting ballot selfies is *the only effective means* of fully counteracting vote buying and voter intimidation, particularly in the Internet age." (*See* R.30, *SOS's Opposition to Motion for Summary Judgment, at 6*, PageID#583 (emphasis added)). But "[b]road prophylactic rules in the area of free expression are suspect.… Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." *NAACP v. Button*, 371 U.S. 415, 438 (1963)(citations omitted). Thus, even if an actual and present compelling state interest exists to support a ballot selfie ban, the Secretary would still have the burden to demonstrate that the challenged statute "is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171 (internal quotation and citation omitted).

> In considering this question, a court assumes that certain protected speech may be regulated, and then asks what is the least restrictive alternative that can be used to achieve that goal. The purpose of the test is not to consider whether the challenged restriction has some effect in achieving [the legislature's] goal, regardless of the restriction it imposes. The purpose of the test is to ensure that speech is

> restricted no further than necessary to achieve the goal, for it is important to ensure that legitimate speech is not chilled or punished. For that reason, the test does not begin with the status quo of existing regulations, then ask whether the challenged restriction has some additional ability to achieve [the legislature's] legitimate interest. Any restriction on speech could be justified under that analysis. Instead, the court should ask whether the challenged regulation is the least restrictive means among available, effective alternatives.

*Ashcroft v. ACLU*, 542 U.S. 656, 666 (2014)(emphasis added). Thus, "[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Playboy*, 529 U.S. at 813. Furthermore, "[w]hen a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." *Id*. at 816; *see Reno v. ACLU*, 521 U.S. 844, 879 (1997)("[t]he breadth of this content-based restriction of speech imposes an especially heavy burden on the Government to explain why a less restrictive provision would not be as effective").

If the governmental interest is to prevent actual vote buying and voter intimidation, then the narrowly tailored remedy should specifically and directly address those precise issues in the form of prohibitions against bribery and intimidation, not use a broad sweep that prohibits core political speech, including such speech unrelated to vote buying or voter intimidation. In fact, such alternatives already exist under Ohio law and advance such interests without the direct infringement on core political speech effectuated by the absolute ballot selfie

ban. *See* Ohio Rev. Code §§ 3599.01(A)(1) & (A)(3)(fourth degree felony to offer money or anything of value to a voter); Ohio Rev. Code § 3599.01(A)(2)(fourth degree felony to attempt to intimidate or coerce a voter to vote or refrain from voting for a particular candidate or issue); Ohio Rev. Code §§ 3599.02(D) & (E)(fourth degree felony to solicit, request, demand, receive, or contract for any money or anything value in return for voting for a particular candidate or issue); Ohio Rev. Code § 3599.06 (employer, including officer or agent thereof, subject to fine for indirectly using any force or restraint or threaten to inflict any injury, harm, or loss, or in any other manner practice intimidation, in order to induce or compel employee to vote or refrain from voting for or against any candidate or issue); Ohio Rev. Code § 3599.20 (fifth degree felony for a person to attempt to induce a voter to show how the voter marked his or her ballot). And there is no indication these law are inadequate to address vote buying or voter intimidation.[16]

"Criminal and civil laws already exist that adequately protect [the government] interests without impinging on free-speech rights.... Because the State has 'various other laws at its disposal that would allow it to achieve its stated interests while burdening little or no speech,' it has not shown any need to have

[16] Additionally, the ensuing discussion of under intermediate scrutiny, *see pages 41-46, infra*, is also applicable to the strict scrutiny analysis. If the ballot selfie ban does not satisfy intermediate scrutiny *ergo* it cannot satisfy strict scrutiny.

[the challenged statutes]." *Animal Legal Def. Fund v. Otter*, 118 F. Supp.3d 1195, 1208 (D. Idaho 2015)(quoting *Comite de Jornaleros v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011)(*en banc*))). As Ohio has numerous other alternatives to address and dissuade vote buying or voter intimidation (and has already enacted such legislation), the imposition of an absolute ballot selfie ban on the exercise of First Amendment rights through the challenged statutes directly infringes core political speech and such a ban does not satisfy the requirements of strict scrutiny. Accordingly, the District Court erred in its ruling on the cross-motions for summary judgment.

### D. Even if a ballot selfie ban is considered as a content-neutral restriction on core political speech, such a ban does not meet the requirements of intermediate scrutiny.

The ballot selfie ban is clearly content-based. However, even if the regulation of core political speech through the ballot selfie ban is considered as content-neutral, the ban would be still unconstitutional under intermediate scrutiny. A law satisfies intermediate scrutiny "if it advances a 'substantial' government interest, if the measure does not 'burden substantially more speech than is necessary' and if the measure leaves open 'ample alternative channels for communication.'" *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 329 (6th Cir. 2009)(*en banc*)(quoting *Ward*, 491 U.S. at 791).

As with the failure of Defendants to establish an actual and present problem giving rise to a compelling interest, such failure extends to the lack of a significant governmental interest under the intermediate scrutiny standard. *See Rideout*¸ 838 F.3d at 73 ("[t]he government's burden is not met when a 'State offer[s] no evidence or anecdotes in support of its restriction'" (quoting *El Día, Inc. v. Puerto Rico Dep't of Consumer Affairs*, 413 F..3d 110, 116 (1st Cir. 2005)(quoting *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995)). But if *arguendo* there is established to be a significant state interest served by the ballot selfie ban, it is most certainly not narrowly tailored to serve such an interest. "[T]he requirement of narrow tailoring is satisfied 'so long as … the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation'" and that "the means chosen are *not substantially broader than necessary to achieve the government's interests*." *Ward*, 491 U.S. at 799-800 (emphasis added). While under such intermediate scrutiny, the regulation "need not be the least restrictive or least intrusive means of" serving the government's interests, the government still "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id*. at 798-99 (emphasis added). Stated otherwise, the government may not "sacrifice speech for efficiency." *Riley v. National Fed'n of the Blind*, 487 U.S 781, 795 (1988). Thus, "a statute is narrowly tailored if it targets and eliminates

no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988)(citation omitted).

Yet, a ballot selfie ban goes beyond targeting and eliminating any actual harm of vote buying or voter intimidation. "[T]he prohibition on ballot selfies reaches and curtails the speech rights of all voters, not just those motivated to cast a particular vote for illegal reasons." *Rideout*¸ 838 F.3d at 74; *accord Indiana Civ. Liberties Union*, 229 F. Supp.3d at 828 ("the State has failed to establish that the potentially broad array of photographs and images proscribed by [the ban on ballot photos] are necessarily related to or limited to those involved in vote buying and voter coercion"). Additionally, there is no indication that "other state and federal laws prohibiting vote corruption are not already adequate to the [claimed] justification" for the challenged statutes. *Rideout*¸ 838 F.3d at 74.

Recognizing these deficiencies, the First Circuit found a broad (and absolute) ban on ballot selfies did not even satisfy intermediate scrutiny and was unconstitutional. Such a ban:

> reaches and curtails the speech rights of all voters, not just those motivated to cast a particular vote for illegal reasons. [The State] does so in the name of trying to prevent a much smaller hypothetical pool of voters who, [the State] fears, may try to sell their votes. [The State] admits that no such vote-selling market has in fact emerged. And to the extent that the State hypothesizes this will make intimidation of some voters more likely, that is no reason to infringe on the rights of all voters.

*Id.* at 74. Similarly, the District Court in *Indiana Civil Liberties Union* concluded that "the burden imposed on speech by the restrictions contained in this statute will fall on voters who are engaged in legally innocuous activities…. At best, it provides an indiscriminate, blunt instrument to remedy a so-far undetected problem." 229 F. Supp.3d at 828. The same logic and conclusion must attend to the absolute ballot selfie ban imposed by Ohio and, thus, even if such a ban is considered to be content-neutral, the ban still fails to satisfy constitutional muster for a lack of narrow tailoring.

Finally, the ballot selfie ban does not leave open ample alternative channels of communication to the prohibited option of posting a ballot selfie. "While the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places, a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate.'" *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984); *see Weinberg v. City of Chicago*, 310 F.3d 1029, 1041 (7th Cir. 2002)("[w]e must also give adequate consideration to whether the alternatives are ample. Whether an alternative is ample should be considered from the speaker's point of view").

The communicative activity of a ballot selfie is that of voters who wish to be able to advocate for a candidate or ballot issue by sharing how they voted and doing so through photographs or digital images of a marked ballot. There are no

alternative methods of communication that adequately substitute for that specific methodology and the attendant messages therein. While, *arguendo*, Ms. Kareem or any prospective person could simply type a message of whom they voted for at an election, such a typed message fails to appreciate the unique communicative aspects inherent in photographs that are not readily substituted by text alone and, in this case, the photograph of a marked ballot which is unique in its communicative aspect. As the Supreme Court has recognized, "[t]he use of illustrations or pictures … serves important communicative functions: it attracts the attention of the audience to the [speaker's] message, and it may also serve to impart information directly." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 647 (1985); *see City of Ladue*, 512 U.S. at 56 ("[d]isplaying a sign from one's own residence often carries a message quite distinct from…conveying the same text or picture by other means*"); see also Rideout*, 838 F.3d at 75 ("[b]allot selfies have taken on a special communicative value"); *Naturist Soc., Inc. v. Fillyaw*, 736 F. Supp. 1103, 1117 (S.D. Fla. 1990)("[p]ictures and sculptures can sometimes convey a message that would not be as easily received or experienced if expressed verbally"), *rev'd in part, aff'd in part*, 958 F.2d 1515 (11th Cir. 1992); *Bartlett v. Superior Court*, 150 Ariz. 178, 722 P.2d 346, 352 (1986)( "pictorial representations are by their nature unique"); *Times Picayune Publ'g Corp. v. United States Dep't of Justice*, 37 F. Supp.2d 472, 477 (5th Cir. 1999)("[a] mug shot preserves, in its unique and

visually powerful way, the subject individual's brush with the law"); *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1067 (9th Cir. 2010)(in finding no ample alternative channel of communication concerning communication via tattoo, "a permanent tattoo 'often carries a message quite distinct' from displaying the same words or picture through some other medium"). Accordingly, through an absolute ban on the posting or dissemination of a ballot selfie on social media or otherwise, the State of Ohio has not provided or allowed for an alternative channel for communication that is an adequate substitute for the speech it now bans.

Thus, even the absolute ballot selfie ban imposed by Ohio is considered to be content-neutral regulations of speech, such a ban fails intermediate scrutiny.

**IV. The Cuyahoga County Board of Elections has not demonstrated its entitlement to Eleventh Amendment immunity.**

As an alternate basis for granting summary judgment in favor of the Cuyahoga County Board of Elections, the District Court concluded that, "in addition to the Court's rulings on the merits, the BOE is also entitled to dismissal as it has Eleventh Amendment." (R.52, *Opinion/Order*, *at 25*, PageID#1143.) With no substantive analysis on this issue, the District County simply and conclusorily declared that "case law confirms" the Board's entitlement to Eleventh Amendment immunity on a federal claim brough pursuant to 42 U.S.C. 1983.

In support of the proposition that "case law" mandated the application of Eleventh Amendment immunity, the District Court cited to *Beiersdorfer v. LaRose*, 397 F. Supp.3d 1037, 1053 (N.D. Ohio 2019), *aff'd*, No. 20-3557, 2021 U.S. App. LEXIS 24988 (6th Cir. 2021) and *Hunter v. Hamilton Cty. Bd. of Elec.*, 850 F. Supp.2d 795 (S.D. Ohio 2012). Not only are those decisions not binding precedent on the issue of a board of elections' entitlement to Eleventh Amendment immunity on a federal claim for damages under 42 U.S.C. 1983, but they also failed to conduct any substantive analysis on the issue as a matter of federal law.

*Beiersdorfer* involved various challenges to ballot access requirements for initiative efforts. The issue of the Eleventh Amendment vis-à-vis boards of elections arose solely in the context of the availability *vel non* of sovereign immunity to preclude a state law claim, not a federal law claim. *Beiersdorfer*, 397 F. Supp.3d at 1053. Relying upon a single quote from the Ohio Supreme Court that "[a] board of elections … is strictly a board and an arm of the state government," and, thus, "[t]he county boards of elections and their members are also arms of the state," the district court in *Beiersdorfer* concluded the state law claim was precluded based on the doctrine of sovereign immunity under the Eleventh Amendment and, thus, dismissed that particular claim. *Id.* (quoting *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elec.*, 67 Ohio St. 3d 334, 617 N.E.2d 1120, 1122 (1993)). In an unpublished decision on appeal, this Court affirmed the

dismissal without prejudice because the plaintiffs were simply "seeking an injunction to enforce state law" and "sovereign immunity clearly bars the state law claim." 2021 U.S. App. LEXIS 24988, at *42-43.

*Hunter* involved, *inter alia*, a challenge relating to the counting of provisional ballots and only sought various forms of injunctive relief, with no claim for damages. With respect to the effort of the board of elections therein to invoke Eleventh Amendment immunity, the district court concluded the board had waived the defense, 850 F. Supp.2d at 802, and, thus, any other pronouncement thereon is *dicta*. But even in that *dicta*, the district court, citing solely to state law, indicated the board of elections "functions as an arm of the State and is entitled to Eleventh Amendment immunity" but only as in regards to "its review and counting of provisional ballots." *Id*. at 801.

Neither *Beiersdorfer* nor *Hunter* involved a claim comparable to that in the present case, *i.e.*, one seeking an award of damages arising from a violation of the civil rights statute. *Kareem v. Cuyahoga Cty. Bd. of Elec.*, 95 F.4th 1019, 1027 (6th Cir. 2024)("[h]er request for nominal damages redresses her alleged retrospective harm…. Based on this, Kareem has standing to bring her suit" (internal citation omitted)). Furthermore, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v.*

*Greene*, 563 U.S. 692, 709 n.7 (2011)(quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d] (3d ed. 2011)). And "[i]t is well-established law in this circuit that unpublished cases are not binding precedent." *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002); *accord Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 944 (6th Cir. 2020). Thus, the District Court's summary declaration in this case that "case law confirms" the application of Eleventh Amendment immunity on the damage claim against the Board of Elections rings hollow.

The seminal error of these decisions in summarily declaring boards of elections as arms of the state is the sole reliance upon a conclusory statement by the Ohio Supreme Court on state law. But "whether an entity is entitled to partake of a state's Eleventh Amendment immunity is a question of federal law, not state law." *Fresenius Med. Care Cardiovascular Res. Inc. v. Puerto Rico*, 322 F.3d 56, 68 n.12 (1st Cir. 2003); *accord Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 650 (6th Cir. 2013)("whether an entity qualifies [for Eleventh Amendment immunity] is a question of federal law").

In *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958 (6th Cir. 2002), this Court held "that the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, *i.e.*, that it is an arm of the state." *Id.* at 964. And in a subsequent unpublished opinion applying *Gragg*, this Court described this burden as being one of "production and persuasion on the

issue of the Eleventh Amendment immunity." *J.S. Haren Co. v. Macon Water Auth.*, 145 Fed. App'x. 997 (6th Cir. 2005). Accordingly, "[a] final resolution [on the] issue [of Eleventh Amendment immunity] will turn on factual findings", not conclusory or *ipse dixit* declarations. *Cash v. Hamilton County Dep't of Adult Probation*, 388 F.3d 539, 545 (6th Cir. 2004). And as this matter was decided pursuant to summary judgment, a *de novo* review of the record will demonstrate that the Board of Elections did not develop any factual record nor demonstrate its entitlement to immunity pursuant to the Eleventh Amendment; instead, the Board only offered conclusory and self-serving *ipse dixit*.

In determining whether an entity is an arm of the state such that it benefits from Eleventh Amendment immunity, this Court sitting *en banc* set forth and adopted a multi-factor test to be applied to the particular facts of the case. *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005)(*en banc*). These factors consist of: (1) the state's obligation to pay any judgment that would accrue against the entity; (2) how the state's statutes and courts have referred to the entity and the degree of control the state has over the entity's actions; (3) whether state or local officials appoint the entity's board members; and (4) whether the entity's functions fall within the traditional purview of traditional state or local governments. *Id.* at 359 (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994)); *accord S.J. v. Hamilton County*, 374 F.3d 416, 418 (6th Cir. 2004). Of all these factors, it is the

first factor, *i.e.*, whether the state treasury is potentially subject to paying any judgment, which is the most important in determining whether an entity enjoys immunity pursuant to the Eleventh Amendment. *Id.* at 364; *Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003)("we now recognize that the question of who pays a damage judgment against an entity as the most important factor in arm-of-the-state analysis, though it is unclear whether it is the only factor or merely the principal one"); *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 615 (6th Cir. 2003)("the primary issue is whether the state would ultimately be liable for any money judgment against the entity").

Yet, in this case, the Board of Elections did not present any summary judgment evidence addressing any of the *Ernst* factors. For that reason alone, the District Court should have rejected the Board's effort to invoke the Eleventh Amendment. For it is well-established with respect to motions for summary judgment, "[t]he moving party has the 'initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record showing an absence of a genuine issue of fact." *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996)("[t]he initial burden is on the moving party to identify those portions of the record that demonstrate the absence

of a genuine issue of material fact"); *Iles v. Logo Paris, Inc.*, 909 F.2d 1483 (6th Cir. 1990)("[t]he party moving for summary judgment must initially inform the court of the basis for its motion and identify those portions of the record that demonstrate the absence of a material issue of fact" (emphasis added)).

Instead, the entire basis for the District Court's conclusion that the Board of Elections was entitled to Eleventh Amendment immunity related back to *dicta* by the Ohio Supreme Court in *Semik* that referred to county boards of elections as "arms of the state", and did so, in the specific context of the relationship of such boards to municipal corporations. *Semik* had nothing to do with consideration of the federal law question of the availability of Eleventh Amendment immunity, including any of the *Ernst* factors. For that reason alone, the District Court improperly found the Eleventh Amendment.

Had the District Court considered the *Ernst* factors mandated by this Court, it would have recognized significant aspects of boards of elections do not readily lead to the conclusion it summarily made. Other matters that undermine any conclusion that boards of elections are arms of the state for purposes of Eleventh Amendment immunity include:

> (1) a board of elections exercises its jurisdiction and duties on a county-wide basis; (2) the Secretary of State is compelled to appoint the nominee of the county executive committee of the political party entitled to the appointment, unless he believes the nominee would not be competent to serve; (3) the members of a county board of elections receive compensation which is determined by the population of the

> county where they serve; (4) the board of county commissioners pays the board member's compensation and the board's expenses from the county treasury; and (5) the board of county commissioners has the power to veto the actions of the board of elections in choosing suitable office space. In addition, it should be noted that the county prosecutor is the legal advisor of a county board of elections…. Furthermore, the Attorney General has held that board of elections personnel are "employed in offices of the county service" for purposes of [statutes relating to sick leave and] "even though the employees of the boards of elections perform functions established by State law, there is no other legal or factual basis for distinguishing them from other county employees."

*State v. Rousseau*, 159 Ohio App. 3d 34, 822 N.E.2d 847, 2004-Ohio-5949 ¶21 (9th Dist.)(quoting opinion of Ohio Ethics Commission).

"[T]he district court did not undertake the appropriate Eleventh Amendment analysis, it did not canvass many of the relevant state law provisions, nor did it make factual findings on many of the factors that inform the decision on the availability of Eleventh Amendment immunity." *Gray v. Laws,* 51 F.3d 426, 435 (4th Cir. 1995). And the reason the District Court failed to do so is the Board of Elections failed to offer any evidence establishing the *Ernst* factors. Accordingly, the Board did not meet or establish its summary judgment burden and the District Court should have rejected outright the effort to claim Eleventh Amendment immunity.

## CONCLUSION

Based upon the foregoing and a *de novo* review of the cross-motions for summary judgment, the *Judgment Entry* (R.53, PageID#1148) should be

REVERSED and the matter REMANDED WITH INSTRUCTIONS for the District Court to enter judgment in favor of Appellant, to issue a permanent injunction restraining the enforcement of any prohibition against the publication or dissemination of ballot selfies, to award nominal damages in favor of Appellant, and for further proceedings.

Respectfully submitted,

*/s/ Curt C. Hartman*
Curt C. Hartman
THE LAW FIRM OF CURT C. HARTMAN
7394 RIDGEPOINT DRIVE, SUITE 8
Cincinnati, Ohio 45230
(513) 379-2923
*hartmanlawfirm@fuse.net*

Christopher P. Finney
FINNEY LAW FIRM, LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245
(513) 943-6655
*chris@finneylawfirm.com*

*Attorneys for Appellant Allison Kareem*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,970 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman.

*/s/ Curt C. Hartman*
*Counsel for Appellant Alison Kareem*

September 8, 2026
*Date*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Brief was or will be served electronically on September 8, 2026, upon all counsel of record via the Sixth Circuit's electronic filing system.

*/ s/ Curt C. Hartman*
*Counsel for Appellant*

# APPENDIX
## *Designation of Relevant District Court Documents*

In accordance with 6 Cir. R. 30(b), Appellant hereby designates the following relevant district court documents.

| District Court Docket | PageID# | Description |
|---|---|---|
| Record Entry No. 24 | 94 – 131 | *Secretary of State's Motion for Summary Judgment* |
| Record Entry No. 26 | 323 – 336 | *Cuyahoga County Bd. of Election's Motion for Summary Judgment* |
| Record Entry No. 26 - 1 | 337 - 439 | *Perlatti Deposition* |
| Record Entry No. 26 - 2 | 440 – 520 | *West Deposition* |
| Record Entry No. 27 | 521 – 541 | *Alison Kareem's Motion for Summary Judgment* |
| Record Entry No. 27-1 | 542-546 | Ariz. Rev. Stat. §16-1018(4), *enacted by* Arizona State Legislature, 52d Leg., 1st Reg. Session, S.B. 1287 (approved by governor, Apr. 2, 2015) |
| Record Entry No. 27-2 | 547-548 | Calif. Elec. Code § 1D.N.H4291, *enacted by* California State Legislature, 2015-16 Session, AB 1494 (approved by governor, Sept. 29, 2016) |
| Record Entry No. 27-3 | 549-553 | Colo. Rev. Stat. §§ 1-13-712 & 31-10-1517, *enacted by* Colorado General Assembly, HB 17-1014 (approved by governor, March 16, 2017) |
| Record Entry No. 27-4 | 554-556 | Hawaii Rev. Stat. § 11-121, *enacted by* Hawaii State Legislature, HB 27 (approved by governor, June 21, 2016 |

| | | |
|---|---|---|
| Record Entry No. 27-5 | 557-568 | *Settlement Agreement*, *Crookston v. Benson*, W.D. Mich. Case No. 1:2016-CV01109 |
| Record Entry No. 28 | 569-571 | *Kareem Declaration* |
| Record Entry No. 30 | 574-596 | *Secretary's Opposition to Motion for Summary Judgment,* |
| Record Entry No. 33 | 603-655 | *Plaintiff's Opposition to Motions for Summary Judgment* |
| Record Entry No. 33-1 | 656-955 | *Adler Deposition* |
| Record Entry No. 34 | 956-981 | *Secretary's Reply in Support of Motion for Summary Judgment* |
| Record Entry No. 40 | 1062 – 1075 | *Memorandum & Opinion* |
| Record Entry No. 46 | 1095-1096 | *Joint Motion to Renew Motions for Summary Judgment* |
| | | *Minute Entry dtd 5 Feb 2025* |
| Record Entry No. 50 | 1107 | *Minute Entry dtd 10 Feb 2026* |
| Record Entry No. 51 | 1108-1118 | *Petition for Writ of Mandamus* |
| Record Entry No. 52 | 1119-1147 | *Opinion/Order* |
| Record Entry No. 53 | 1148 | *Judgment Entry* |
| Record Entry No. 54 | 1149 | *Notice of Appeal* |
| Record Entry No. 55 | 1150 | *Order* (Sixth Circuit) |

# ADDENDUM

***Pertinent Provisions of the Ohio Revised Code***

**Ohio Revised Code § 3501.35(A):**

(A) During an election and the counting of the ballots, no person shall do any of the following:

…

(4) Exhibit any ticket or ballot which the elector intends to cast;

**Ohio Revised Code § 3599.20:**

No person shall attempt to induce an elector to show how the elector marked the elector's ballot at an election; or, being an elector, allow the elector's ballot to be seen by another, except as provided by section 3505.24 of the Revised Code, with the apparent intention of letting it be known how the elector is about to vote; or make a false statement as to the elector's ability to mark the ballot; or knowingly mark the ballot so it may be identified after it has been cast; or attempt to interfere with an elector in the voting booth when marking the elector's ballot; or knowingly destroy or mutilate a lawful ballot; or remove from the polling place or be found in unlawful possession of a lawful ballot outside the enclosure provided for voting; or knowingly hinder or delay the delivery of a lawful ballot to a person entitled to receive it; or give to an elector a ballot printed or written contrary to law; or forge or falsely make an official indorsement on a ballot.

Whoever violates this section is guilty of a felony of the fifth degree.