No. 26-3514

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

ALISON KAREEM,

*Plaintiff – Appellant,*

V.

CUYAHOGA COUNTY, OH BOARD OF ELECTIONS; FRANK LAROSE, OHIO SECRETARY OF STATE; MICHAEL C. O'MALLEY, CUYAHOGA COUNTY PROSECUTING ATTORNEY

*Defendants – Appellees*

On Appeal from the United States District Court for the Northern District of Ohio, Eastern Division, District Court Case No. 1:20-cv-02457

**BRIEF OF APPELLEES CUYAHOGA COUNTY BOARD OF ELECTIONS AND THE CUYAHOGA COUNTY PROSEUCTING ATTORNEY**

MICHAEL C. O'MALLEY, ESQ.
Prosecuting Attorney of
Cuyahoga County, Ohio

By: MARK R. MUSSON*
Assistant Prosecuting Attorney
The Justice Center, Courts Tower
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113
Fax: (216) 443-7602
Phone: (216) 443-7795
mmusson@prosecutor.cuyahogacounty.us

*Attorneys for Cuyahoga County Appellees*

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellees Cuyahoga County Board of Elections and the Cuyahoga County Prosecuting Attorney are governmental units.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................2
TABLE OF CONTENTS.............................................................................3
TABLE OF AUTHORITIES ........................................................................4
SUMMARY OF ARGUMENT .......................................................................6
ARGUMENT .............................................................................................6

A. The Cuyahoga County Board of Elections joins the Brief of the Ohio Secretary of State on the admissibility of Dr. Adler's expert opinion and the constitutionality of State of Ohio's laws. .............................. 6

B. The Court need not reach the question on the CCBOE's entitlement to Eleventh Amendment immunity ................................................ 7

C. The CCBOE is entitled to immunity under the Eleventh Amendment ....... 9

D. Even if the CCBOE is not entitled to Eleventh Amendment immunity, Ms. Kareem failed to establish liability under Monell.........................21

CONCLUSION .........................................................................................22
CERTIFICATE OF COMPLIANCE............................................................23
CERTIFICATE OF SERVICE ...................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003)........................................ 14

*Beiersdorfer v. LaRose*, 397 F. Supp.3d 1037 (N.D. Ohio 2019)................ 9, 10

*Bies v. Sheldon*, 775 F.3d 386 (6th Cir. 2014)........................................ 9

*City of Pontiac Retired Employees. Ass'n v. Schimmel*, 726 F.3d 767 (6th Cir. 2013)................................................................................. 9

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005)........................................ 10

*Garner v. Memphis Police Dep't*, 8 F.3d 358 (6th Cir. 1993)...................... 22

*Guertin v. Michigan*, 912 F. 3d 907 (6th Cir. 2019)................................. 12

*Harkless v. Brunner*, 545 F.3d 445 (6th Cir. 2008) ................................ 21

*Hunter v. Hamilton Cty. Bd. of Elec*., 850 F. Supp.2d 795 (S.D. Ohio 2012).... 9, 11

*Jackson v. City of Cleveland*, 925 F. 3d 793 (6th Cir. 2019)...................... 22

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998).................... 22

*Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018)...................................... 11

*Marek v. Chesny*, 473 U.S. 1 (1985)..................................................... 15

*Monell v. New York City Dep't of Social Service*, 436 U.S. 658 (1978)........... 21

*Muller Optical Co. v. EEOC*, 743 F.2d 380 (6th Cir. 1984)......................... 8

*Osborn v. Griffin*, 865 F.3d 417 (6th Cir. 2017)...................................... 8

*Regents of Univ. of Calif. v. Doe*, 519 U.S. 425 (1997)............................11, 12

*State ex rel. Dreamer v. Mason*, 129 Ohio St. 3d 94 (Ohio 2011).............. 17, 21

*State ex rel. Ruggles v. Howser*, 12th Dist. No. CA87-11-017, 1988 Ohio App. LEXIS 1678 (May 2, 1988)............................................................ 17

*State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections*, 67 Ohio St. 3d 334 (Ohio 1993) .......................................................................................... 17

*State ex rel. Vail v. Craig*, 10 Ohio Dec. 577, 581, 1900 Ohio Misc. LEXIS 118 (C.P. 1900) …….. 16, 17, 21

*Torres v. Precision Indus*., 938 F.3d 752 (6th Cir. 2019)…….. 8

*Union Cty. Commrs. v. Brunner*, 146 Ohio Misc.2d 40, 2008-Ohio-2833 (C.P.) …….. 18

*Wilkins v. Timbur*, 54 Ohio Law Abs. 378, 86 N.E. 2d 503 (C.P. 1949)…….. 16

**Laws**

United States Constitution Art. I, § 4 Cl. 1 …….. 21

United States Constitution Art Art. II § 1, Cl. 2 & 4 …….. 21

ORC § 9.58 …….. 7, 15

ORC § 9.87 …….. 7, 14, 15

ORC § 2307.25…….. 16

ORC § 3501.05 …….. 19

ORC § 3501.06 …….. 7, 18, 20

ORC § 3501.11…….. 7, 19

ORC § 3501.16 …….. 7, 19, 20

ORC § 3501.17 …….. 14

ORC § 3501.27 …….. 19

**Rules**

Fed. Civ. R. 68 …….. 15

Fed. R. App. P. 28 …….. 7

## SUMMARY OF THE ARGUMENT

For the reasons that the Ohio Secretary of State states, the District Court correctly upheld the constitutionality of the statutes that Ms. Kareem challenges as applied to "ballot selfies" and correctly accepted the expert opinion as evidence. Thus, the Court does not need to issue an advisory opinion on the Eleventh Amendment immunity granted to the Cuyahoga County Board of Elections.

In the event the Court reaches the issue, the CCBOE is entitled to immunity under the Eleventh Amendment as an arm of the state because the Ms. Kareem's claim against the CCBOE potentially exposes the state treasury to liability, the CCBOE serves under the control of the Ohio Secretary of State as the state official's representative, and the CCBOE's functions are traditionally viewed as those of the state, not its political subdivisions. Accordingly, the District Court correctly decided that the CCBOE falls under the ambit of the Eleventh Amendment.

## ARGUMENT

### A. The Cuyahoga County Board of Elections joins the Brief of the Ohio Secretary of State on the admissibility of Dr. Adler's expert opinion and the constitutionality of State of Ohio's laws.

Alongside co-Appellee Ohio Secretary of State, Ms. Kareem sued the Cuyahoga County Board of Elections ("CCBOE") and the Cuyahoga County Prosecuting Attorney's Office ("CCPO") (collectively, "County Appellees"). The County Appellees are creatures of state law and perform certain functions prescribed

by state law within Cuyahoga County, Ohio. R. 1, PageID#3, Compl. at ¶¶9 and 11. See also, ORC § 3501.11 (defining those responsibilities for the CCBOE) and ORC §§ 309.08 and 309.09 (those of the CCPO).

The members of the CCBOE are appointed to serve as the representatives of the Ohio Secretary of State, and the Secretary of State may summarily remove any member of the CCBOE. See, ORC §§ 3501.06(A) and 3501.16. CCBOE is obligated to perform the duties prescribed by the Ohio Secretary of State. See, ORC § 3501.11(P).

The State of Ohio prohibits the CCBOE (and its members) and the CCPO from controlling this litigation through settlement that "nullifies, suspends, enjoins, alters, or conflicts with any provision of the Revised Code." See, ORC § 9.58(B). Ohio law further entitles the CCBOE's members to indemnity for liability incurred through the performance of their duties. See, ORC § 9.87(A). Accordingly, the CCBOE joins the Brief of co-Appellee Ohio Secretary of State under Fed. R. App. P. 28(i) on the merits of Ms. Kareem's claims on the constitutionality of the statutes prohibiting electors from exhibiting their voted ballots.

**B. The Court need not reach the question on the CCBOE's entitlement to Eleventh Amendment immunity.**

The District Court disposed of Plaintiff Allison Kareem's underlying First Amendment claims against all defendants before deciding that the CCBOE was

entitled to immunity under the Eleventh Amenement from those rejected claims. See, R. 25, Opinion and Order, PageID#1143. The claims that Mrs. Kareem asserted against all defendants hinge on the merits of Ms. Kareem's assertions under the First Amendment. Accordingly, there is no need to address the CCBOE's defense under the Eleventh Amendment after denying Ms. Kareem's request for declaratory judgment and injunctive relief.

This Court has expressed a "general preference for declining to pass on unsettled constitutional issues whenever there are alternative grounds available to dispose of a case." *Osborn v. Griffin*, 865 F.3d 417, 459 (6th Cir. 2017). Moreover, "[f]ederal courts have long refused to decide abstract, contingent, or hypothetical questions. Nor will they decide 'questions of a constitutional nature unless absolutely necessary to a decision of the case' or 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Torres v. Precision Indus.*, 938 F.3d 752, 754-755 (6th Cir. 2019)(internal citations omitted). See also, *Muller Optical Co. v. EEOC*, 743 F.2d 380, 386 (6th Cir. 1984)("The duty to avoid decisions of constitutional questions and the various doctrines related to advisory opinions, political questions, ripeness, etc., are all based upon the general policy of judicial restraint.")

This principle of judicial restraint equally applies when disposing of claims on one constitutional question that precludes a decision under another constitutional

provision. See, *Bies v. Sheldon*, 775 F.3d 386, 403 (6th Cir. 2014)(disposing of the petitioner's *habeas* claim under *Brady* obviates the need to decide the remaining constitutional infirmities raised under the Eighth Amendment). See also, *City of Pontiac Retired Employees. Ass'n v. Schimmel*, 726 F.3d 767, 771 (6th Cir. 2013) (decision on state constitutional grounds avoids the need to address the federal constitution question).

Accordingly, the Court should avoid issuing an unnecessary opinion on the Eleventh Amendment constitutional question since the District Court correctly rejected Ms. Kareem's First Amendment claims disposing of her entire action, including the claims asserted against the CCBOE.

**C. The CCBOE is entitled to immunity under the Eleventh Amendment**

Ms. Kareem urges this Court to cast aside prior district court cases, one of which this Court previously affirmed, that the court below relied upon to recognize the immunity that the CCBOE derives from the Eleventh Amendment. See, Br. of Appellant at p. 46, citing *Beiersdorfer v. LaRose*, 397 F. Supp.3d 1037, 1053 (N.D. Ohio 2019), aff'd, No. 20-3557, 2021 U.S. App. LEXIS 24988 (6th Cir. 2021) and *Hunter v. Hamilton Cty. Bd. of Elec.*, 850 F. Supp.2d 795 (S.D. Ohio 2012). Ms. Kareem contends that the CCBOE did not carry its burden regarding the scope of immunity afforded to the CCBOE under Eleventh Amendment. Ms. Kareem is mistaken, and the CCBOE is entitled to Eleventh Amendment immunity.

Ms. Kareem first seeks to distinguish the authority recognizing the immunity extended to the CCBOE under the Eleventh Amendment. Ms. Kareem contends that the immunity recognized in *Beiersdorfer* is inapplicable because her claims arise under federal law as opposed to the injunctive relief sought in *Beiersdorfer* based on state law. See, Br. of Appellant at p. 46-47. However, Ms. Kareem is not merely seeking injunctive relief against the CCBOE as an entity (as opposed to its individual members) but also seeks monetary damages (albeit nominal) from the CCBOE as a corporate body under 42 USC § 1983 for the constitutional violations that she alleges. See, Br. of Appellee at p. 2.

The *Ex Parte Young* exception to Eleventh Amendment immunity distinguishes between state and federal law to open the federal courts to entertain actions "filed against a state *official* for *purely* injunctive relief enjoining the official from violating *federal law*." *Beiersdorfer v. LaRose*, 2021 U.S. App. LEXIS 24988 at *43 (6th Cir. August 20, 2021), citing *Ernst v. Rising*, 427 F.3d 351, 358-59 (6th Cir. 2005)(emphasis added). Thus, the distinction between state and federal law claims that Ms. Kareem seeks to draw from *Beirsdorfer* is not whether the Eleventh Amendment applies to the CCBOE in the first instance but whether an exception to its immunity provides her with access to the federal courts to hear her claim against the CCBOE. Since Ms. Kareem is seeking monetary damages against the CCBOE as an entity and not *purely* injunctive relief against any *individual* CCBOE officials,

the CCBOE's entitlement to immunity under the Eleventh Amendment recognized in *Beirsdorfer* remains intact.

Ms. Kareem's attempt to relegate the Eleventh Amendment immunity recognized in *Hunter v. Hamilton County Bd. of Elections*, 850 F. Supp. 2d 795 (2012) to mere *dicta* is equally ineffective. The District Court's recognition that the Ohio boards of election are entitled to immunity under the Eleventh Amendment was necessary for the trial court to determin that the board waived its defense. Without possessing the defense in the first instance, there would be nothing to waive. The CCBOE has preserved and asserted the claim to immunity throughout this litigation. Thus, the court has no occasion to examine the question of waiver of the defense both recognized and deemed waived in *Hunter*.

Turning to whether the CCBOE met its burden on summary judgment, Eleventh Amendment "immunity generally bars damages actions against states from proceeding in federal court." *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018). The United States Supreme Court has long established that the immunity "encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997). The determination whether an instrumentality of the state may invoke the immunity considers the "relationship between the State and the entity in question." *Id.*

Ms. Kareem correctly points out that the issue whether immunity applies "is a question of federal law. But that federal question can be answered only after considering the provisions of state law that define the agency's character." *Regents of Univ. of Calif.*, 519 U.S. 425 at fn. 5. The state law that the federal courts consider in characterizing the entity's relationship with the state itself includes both state statutes and state court opinions construing those laws. See, e.g., *Guertin v. Michigan*, 912 F. 3d 907, 937-941 (6th Cir. 2019). Thus, the Court should reject Ms. Kareem's attempt to diminish the insight that state court decisions provide when characterizing the boards of election as an arm of the state under Ohio law.

As Ms. Kareem points out, the Sixth Circuit has "identified four factors relevant to whether an entity is an 'arm of the State' on the one hand or a 'political subdivision' on the other:

> (1) the State's potential liability for a judgment against the entity;
> (2) the language by which state statutes, and state courts refer to the entity and the degree of state control and veto power over the entity's actions;
> (3) whether state or local officials appoint the board members of the entity; and
> (4) whether the entity's functions fall within the traditional purview of state or local government.

*Guertin v. Michigan,* 912 F.3d 907, 937 (6th Cir. 2019), quoting *Ernst v. Rising*, 427 F.3d 351, 359(6th Cir. 2005)(en banc)(internal citations omitted).

While the first consideration is the "most important factor," the others are determinative if they "far outweigh" the first attribute. See, *Guertin* at 937. "This

is so because sovereign immunity protects not only a state's purse but also its dignity – '. . . serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Id.* quoting, *Seminole Tribe v. Florida*, 517 U.S. 44, 58 (1996).

As described below, the state treasury is exposed to potential liability for Ms. Kareem's claims against the CCBOE. Moreover, applying the remaining *Ernst* factors to the CCBOE reveal that its functions are performed on behalf of the state executing the state's laws and policies. Thus, the remaining factors greatly weigh in favor of the CCBOE possessing Eleventh Amendment immunity from Ms. Kareem's claims.

**1. The State's potential liability for a judgment against the CCBOE**

In addition to requesting declaratory and injunctive relief enjoining the enforcement of state law, Ms. Kareem filed this action seeking the award of nominal damages from the CCBOE under 42 USC § 1983. See, e.g., R. 1, Complaint at ¶4, 41, 49 PageID#2, 10, 11. Moreover, Ms. has requested monetary relief in the form of her attorneys fees. *Id*. at PageID#12.

Under Section 3501.17(A) of the Ohio Revised Code, the "expenses of the board of elections shall be paid from the county treasury, in pursuance of appropriations by the board of county commissioners, in the same manner as other county expenses are paid." However, the state is obligated by law to "indemnify an

officer or employee from liability incurred in the performance of official duties by paying any judgment in, or amount negotiated in settlement of, any civil action arising under federal law[.]" ORC § 9.87(A). This indemnity applies only after the officer or employee "incurs" the liability from performing their official duties and not manifestly outside the scope of their employment. See, *Id*. See also, ORC § 9.87(B)(2).

Officers or employees sued in their official capacity "stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). An official-capacity suit "imposes liability on the entity that he represents." *Id*. quoting, *Brandon v. Holt*,469 U.S. 464, 471-72 (1985). Accordingly, a suit against an officer or employee of the CCBOE in their official capacity is a claim against the CCBOE itself. It stands to reason that CCBOE as an entity is entitled to the same indemnity under ORC § 9.87(A) from the State of Ohio as officers and employees sued in their official capacity because those indemnified officers and employees incur liability in their official capacity, which is actually the entity itself. Stated another way: if officers and employees sued in their official capacity are entitled to indemnity from the State of Ohio under ORC § 9.87, then so is the CCBOE.

But it is only after the liability is incurred when the Attorney General prepares an indemnity agreement providing for the payment of "a particular judgment that has been rendered or a particular settlement amount that has been negotiated." ORC

§ 9.87(E)(1). Thus, the CCBOE cannot produce factual evidence of its entitlement to indemnity from the State of Ohio until after the liability is incurred through judgment or settlement agreement.

Beyond the nominal damages Ms. Kareem claims against the CCBOE, its greatest exposure to monetary liability arises from the attorney's fee shifting provision in 42 USC § 1988(b). If Ms. Kareem is the prevailing party, she may seek to recover her attorney's fees from the defendants as part of her "costs."

One legal mechanism available to mitigate litigant's risk of exposure to liability for attorney's fees is making an offer of judgment pursuant to Fed. Civ. R. 68. See e.g., *Marek v. Chesny*, 473 U.S. 1, 9 (1985) ("Since Congress expressly included attorney's fees as 'costs' available to a plaintiff in a § 1983 suit, such fees are subject to the cost-shifting provision of Rule 68."). However, the State of Ohio bars the CCBOE from making an offer of judgment that "nullifies, suspends, enjoins, alters, or conflicts with any provision of the Revised Code." ORC § 9.58(B). Thus, the CCBOE is precluded under state law from "cutting off" its risk of exposure to Ms. Kareem's costs (including attorney fees awarded under 42 USC §1988) through an offer of judgment that contains an agreement not to enforce the state statutes she challenges. This prohibition in state law potentially entitles the CCBOE to the right of contribution under ORC § 2307.25 against the State of Ohio for any attorney's fees awarded to Ms. Kareem. Just as with the indemnity claim, the CCBOE cannot

factually establish its right to contribution from the State of Ohio for any attorney's fees awarded to Ms. Kareem until after judgment is rendered, which would defeat the entire purpose of the immunity granted under the Eleventh Amendment.

Accordingly, the state has potential exposure to liability for judgment against the CCBOE. And the factor that this Court recognizes as the "the first, foremost and most salient" on the issue, creates a strong presumption in favor of granting the CCBOE immunity under the Eleventh Amendment.

**2. The language that state statutes and state courts use to describe the degree of state control over the CCBOE makes the entity an arm of the State of Ohio**

The boards of elections in Ohio trace their lineage back to the "Deputy State Supervisors and Inspectors of Elections" established under prior codifications of state law. See, *Wilkins v. Timbur*, 54 Ohio Law Abs. 378, 86 N.E. 2d 503, 504 (C.P. 1949) ("Members of the Board of Elections are no longer called 'Deputy State Supervisors and Inspectors of Elections', but are now designated as 'Board of Elections' in the several Counties[.]")

In characterizing the "Deputy State Supervisors and Inspectors of Elections" as state officials rather than county officers, courts have recognized that the elections officials in Ohio "do not act in an independent capacity. They are deputy state supervisors, which implies that they are responsible to some principal, which shears them of the characteristics of independence." *State ex rel. Vail v. Craig*, 10 Ohio

Dec. 577, 581, 1900 Ohio Misc. LEXIS 118, *5 (C.P. 1900). The principal that these agents have served since their creation is the Ohio Secretary of State. *Id*. ("the secretary of state as the principal election officer, and the deputy state supervisors as subordinate officers for carrying out the *agencies of the state* for the conduct of elections.")(emphasis added).

Ohio state court decisions have remained consistent on this point. See, e.g., *State ex rel. Dreamer v. Mason*, 129 Ohio St. 3d 94, 99 (Ohio 2011) (As we noted, "[m]embers of the boards of elections act under the direct control of and are answerable only to the Secretary of State in his capacity as the chief election officer of the state. They perform no county functions and are not county officers.")(quoting, *State ex rel. Columbus Blank Book Mfg. Co. v. Ayres*, 142 Ohio St. 216 (Ohio 1943). See also, *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections*, 67 Ohio St. 3d 334, 336 (Ohio 1993), quoting *State ex rel. Hinchcliffe v. Gibbons*, 116 Ohio St. 390 (Ohio 1927) ("The board of elections is not in any sense a municipal functionary. It is strictly a board and an arm of the state government."); *State ex rel. Ruggles v. Howser*, 12th Dist. No. CA87-11-017, 1988 Ohio App. LEXIS 1678, *8 (May 2, 1988)(there is an "intentional legal separation between a county's board of elections and a county's board of commissioners" because "*such boards are under the control of an answerable only to the Secretary of State and are*

*not county officers*.")(emphasis added); and *Union Cty. Commrs. v. Brunner*, 146 Ohio Misc.2d 40, 2008-Ohio-2833, ¶33 (C.P.).[1]

The courts' consistency is not surprising since the boards of election's statutory underpinning has similarly remained consistent. The state's statutes currently provide that each county in the state hosts "a board of elections consisting of four qualified electors of the county, who *shall be appointed by the secretary of state, as the secretary's representatives*." ORC § 3501.06(A)(emphasis added). Moreover, the Ohio "secretary of state may summarily remove or suspend any member of a board of elections[.]" ORC § 3501.16. Further, the Ohio secretary of state breaks any tie vote or disagreement of the four-member boards and "summarily decide the question, and the secretary of state's decision shall be final." ORC § 3501.11(X).

---

[1] Ms. Kareem's reliance on *State v. Rousseau*, 159 Ohio App. 3d 34, 822 N.E.2d 847, 2004-Ohio-5949 (9th Dist.) is misplaced. The court in *Rousseau* was considering whether a member of a board of elections is "connected" to the county government under state's criminal prohibition against unlawful interests in public contracts. Government officials in Ohio, like members of the boards of elections, are forbidden from having a financial or fiduciary interest in any contracts of the government entity "with which the public official is connected[.]" ORC 2921.42(A)(4). The criminal defendant in *Rousseau* was a member of the Lorain County Board of Elections, and also a salesman that received a commission for a contract that the Lorain County Board of County Commissioners awarded to his employer. See, *Rousseau*, 2004-Ohio-5949, ¶4. The Court of Appeals upheld his conviction upon the finding that a board of elections member is sufficiently "connected" to the county government to fall within the prohibition under the statute. See, *Id*. at ¶22. The analysis under the criminal statue is completely divorced from the Eleventh Amendment factors that this Court laid out in *Ernst*.

Furthermore, the Secretary of State has the duty to "issue instructions by directives and advisories … to members of the boards as to the proper methods of conducting elections." ORC § 3501.05(B). Thereafter, each board of elections "shall establish a program as prescribed by the secretary of state for the instruction of election officers in the rules, procedures, and law relating to elections." ORC § 3501.27(B). Finally, the law compels the boards of elections to "[p]erform other duties as prescribed by law or the rules, directives, or advisories of the secretary of state." ORC § 3501.11(P).

Regarding the voted-ballot exhibition prohibitions at issue in this case, the Ohio Secretary of State has instructed the boards of election that voters are prohibited by law from displaying their voted ballot to others. See, R.26-1, Perlatti Deposition, at PageID#366-367. See also, Section 5.12 of the Ohio Elections Official Manual at p. 5-204 ("Ohio law contains many prohibitions concerning the handling of ballots, including: showing a voted ballot to another person[.]" (accessible at: https://www.ohiosos.gov/assets/dir2026-27-fulleom.pdf).[2] Thus, the CCBOE is legally and administratively obligated by the Ohio Secretary of State to

[2] The Court may take judicial notice of information contained on state websites. See, *Yoder v. Bowen*, 146 F.4th 516, 526 at fn.1 (6th Cir. 2025). The standard for judicial notice under Fed. R. Evid. 201(b) ("applies to appellate courts taking judicial notice of facts supported by documents not included in the record on appeal." *United States v. Ferguson*, 681 F.3d 826, 834 (2012)

observe and obey the prohibitions that Ms. Kareem seeks to use to impose liability upon it.

Accordingly, the state statutes of Ohio and its state courts refer to the boards of election as state entities entirely under the Ohio Secretary of State's control. Thus, the second factor established under *Ernst* prescribes the characterization of the CCBOE as an arm of the state possessing immunity from Ms. Kareem's suit under the Eleventh Amendment.

**3. Whether state or local officials appoint the board members of the CCBOE**

As discussed above, the Ohio Secretary of State appoints the members of the boards of elections as representatives of the state office and may summarily remove them. See, ORC §§ 3501.06(A) and 3501.16. Consequently, the third factor identified in *Ernst* weighs heavily in favor of classifying the CCBOE as entitled to Eleventh Amendment immunity from Ms. Kareem's suit.

**4. Whether the entity's functions fall within the traditional purview of state or local government.**

Also discussed above, the boards of election's functions have historically been considered functions of the state. See, *State ex rel. Vail v. Craig*, 10 Ohio Dec. 577, 581, 1900 Ohio Misc. LEXIS 118, *5 (C.P. 1900). See also, *State ex rel. Dreamer v. Mason*, 129 Ohio St. 3d 94, 99 (Ohio 2011).

This is even more true on the federal level under the Constitution of the United States of America, which designates the state and federal legislatures as being responsible for executing elections. See, US Const. Art. I, § 4 Cl. 1 and Art. II § 1, Cl. 2 & 4. See also, *Harkless v. Brunner*, 545 F.3d 445, 454 (6th Cir. 2008)("When it comes to time, place, and manner regulations for federal elections, *the Constitution primarily treats states as election administrators* rather than sovereign entities.")(emphasis added). Thus, the three factors considering matters beyond the financial liability add great weight to characterizing the CCBOE as entitled to immunity under the Eleventh Amendment.

**D. Even if the CCBOE is not entitled to Eleventh Amendment immunity, Ms. Kareem failed to establish liability under *Monell*.**

If the CCBOE is denied immunity, Ms. Kareem would have to establish municipal liability under 42 USC 1983 against the CCBOE under *Monell v. New York City Dep't of Social Service*, 436 U.S. 658 (1978).

This Court has recognized the four theories that may establish a *Monell* claim as 1) the government entity having an illegal official policy; 2) someone with final decision making authority ratifying the unconstitutional conduct; 3) policy for inadequate training or supervision on constitutional rights of others; or 4) a custom of tolerance or acquiescence to federal rights violations. See, *Jackson v. City of*

*Cleveland*, 925 F. 3d 793, 828 (6th Cir. 2019), quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Ms. Kareem has made no such showing here.

Ms. Kareem's lawsuit challenges state law and – without more – do not alone impute liability to local governments. See, *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) and *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)(local government's affirmative acts independently executing state policy is necessary to attribute state policy to local authority). Accordingly, Ms. Kareem's claims against the CCBOE fail even without the shield of immunity from her suit under Eleventh Amendment.

## **CONCLUSION**

The District Court correctly upheld the constitutionality of state law for the reasons set forth by the Ohio Secretary of State. While the Court need not reach the issue, the CCBOE is entitled to immunity from Ms. Kareem's claims under the Eleventh Amendment.

Respectfully submitted,

MICHAEL C. O'MALLEY, Prosecuting
Attorney of Cuyahoga County, Ohio

By: s/Mark R. Musson
MARK R. MUSSON (0081110)
Assistant Prosecuting Attorney
Phone: (216) 443-7795
mmusson@prosecutor.cuyahogacounty.us
The Justice Center, Courts Tower

1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113
Fax: (216) 443-7602

*Attorneys for Appellees Cuyahoga County Board of Elections and Prosecuting Attorney*

## CERTIFICATE OF COMPLIANCE

I certify that this document is set in 14-point Times New Roman typeface and therefore complies with the typeface and style requirement of Fed. R. App. P. 32(a)(5) & (6).

I further certify that this document contains no more than 13,000 words and complies with the type-volume requirements of Fed. R. App. P. 28.1(e)(2)(A)(i).

I further certify that the foregoing brief complies with all other requirements and limitations of Fed. R. App. P. 28, 28.1 & 32 and 6th Cir.R. 28 and 32.

s/ *Mark R. Musson*
MARK R. MUSSON

One of the attorneys for the County Appellees

## STATEMENT REGARDING ORAL ARGUMENT

The County Appellees doe not believe oral argument is necessary to decide this appeal.

## CERTIFICATE OF SERVICE

I certify that on November 9, 2026, the foregoing was electronically filed with the Clerk of Court using the electronic file system, notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ *Mark R. Musson*
MARK R. MUSSON
Assistant Prosecuting Attorney
One of the attorneys for the County Appellees

# APPENDIX

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry | Document Description | Page ID # |
|---|---|---|
| 1 | Amended Complaint | 1-12 |
| 24-2 | Depo. of Ms. Kareem | 134-211 |
| 26-1 | Depo. of Perlatti | 337-412 |
| 26-2 | Depo. of West | 503-516 |
| 28 | Declaration of Ms. Kareem | 569-570 |
| 40 | Opinion & Order | 1062-1075 |
| 41 | Judgement Entry | 1076 |